Leroy E. Curren, appellant, v. All persons having or claiming any interest in a parcel of land in Sections 10 and 11, Township 8, Range 19, Dawson County, Nebraska, et al., appellees.

31 N. W. 2d 405

Filed March 19, 1948.    No. 32346.

*George A. Munro,* for appellant.

*John M. Neff* and *Dryden & Jensen,* for appellees.

Heard before Simmons, C. J., Paine, Messmore, Yeager, Chappell, and Wenke, JJ., and Westermark, District Judge.

Paine, J.

This is an action to quiet title to an island in the Platte River by adverse possession for ten years. The trial court found against the plaintiff, and denied title to the plaintiff, who has appealed.

The plaintiff filed a petition against all persons having any interest in an island in the Platte River, therein described by metes and bounds, but naming no persons individually as defendants. The plaintiff alleged that he had been in open, notorious, exclusive, continuous,

adverse, and undisputed possession of this island, located in Sections 10 and 11, Township 8 North, Range 19 West, of the Sixth P. M., in Dawson County, containing 41.7 acres of land in the north half of said Section 10, and 64.7 acres in the north half of said Section 11, under a claim of title and ownership for more than ten years; that any claim of ownership that any of the defendants might have had has been barred by the statute of limitations of Nebraska; and that there were persons who appeared to claim, or have some interest in, or title to, or lien upon, said island, but such right or title did not appear of record in said Dawson County, and that he had been unable to ascertain, and did not know, their names or whereabouts. We will call the island in dispute the Curren Island.

The plaintiff prayed for a decree quieting and confirming the title to Curren Island in him, and that the defendants and all persons claiming by, through or under them be forever barred from asserting any right, title, or interest in and to said real estate.

Plaintiff secured an order for service by publication, and proof thereof was duly filed. On December 12, 1945, the cause came on for hearing before the court. Plaintiff appeared in person and by his attorney. W. A. Stewart, Jr., appointed by the court under the Soldiers and Sailors' Relief Act, filed an answer, which was a general denial. Evidence being taken, the court found that the allegations of the plaintiff's petition were true, and quieted title of this Curren Island in the plaintiff.

In February 1946 motion was filed to vacate and set aside the judgment in favor of the plaintiff for the reason that Theodore A. Peterson and Doris Peterson were proper parties defendant, as shown by the records in the office of the register of deeds; that they were not served with summons and never entered their appearance, although known by plaintiff that they claimed title to a part of the island described in his petition; and they moved the court that after vacation of the decree they

be allowed to file answer and cross-petition.

On February 27, 1946, a similar motion to vacate the judgment was filed on behalf of Helen Crawford and Sybil Kanzler, on the ground that they were proper parties and not served with summons, although it was known by the plaintiff that these parties claimed title to a part of said Curren Island.

On March 5, 1946, the court after a hearing set aside the decree and gave the four parties filing the motions the right to answer in said case.

The answer of Theodore A. Peterson and Doris Peterson denied each and every allegation in plaintiff's petition except the description of the island by metes and bounds. For their cross-petition they alleged that they were the owners of Lots 1, 2, and 3 in Section 10, Township 8, Range 19, Dawson County; that said lots were islands near the south bank of the Platte River, according to the original plat of the United States government survey; also that they were the owners of Lots 5 and 6 in Section 9 and Lots 6 and 7 in said Section 10; that said lots contained the south bank of the river opposite that part of the island described in plaintiff's petition which lies in said Section 10; and that Curren Island was accretive and relictional land, and was therefore owned by these answering defendants, who owned to the thread of the stream. Wherefore, defendants Theodore A. Peterson and Doris Peterson prayed that a decree be entered quieting and confirming in them the title to the island above set out.

On April 2, 1946, a similar answer and cross-petition was filed by Helen Crawford and Sybil Kanzler, setting out that they were the joint owners of Section 11; that that part of Curren Island described in plaintiff's petition which lies east of the west line of Section 11, as extended to the center of the river, the same being partly accretive land, belonged to these defendants, who had been in the open and notorious possession of same since they acquired title under claim of ownership; that

plaintiff had no right, title, interest, or claim upon said island, and was trespassing thereon; that these defendants through their grantors have been in open, notorious, exclusive, continuous, and adverse possession under a claim of ownership for more than ten years; and they prayed that a decree be entered quieting the title of such part of the island in them.

The plaintiff filed a reply to said answer and cross-petition, denying each and every allegation therein, and alleged that his occupancy of and claim of ownership of Curren Island was brought to the attention of said answering defendants more than ten years prior to the filing of his petition; that plaintiff, with full knowledge of such answering defendants, built a cabin on said island and resided thereon, claiming to own the same, with knowledge and acquiescence of the defendants Helen Crawford and Sybil Kanzler; and that any interest they had therein has been barred by the statute of limitations. The plaintiff filed a similar reply to the answer and cross-petition of defendants Theodore A. Peterson and Doris Peterson.

The second trial of the case, on the issues made after the two cross-petitions and replies thereto were filed, began October 2, 1946, and the first witness called was F. E. Tanner, county surveyor of Dawson County, who had made a map, exhibit No. 1, on September 26, 1945, from a survey of the island. This exhibit shows the Curren Island by metes and bounds, its total area being 106.4 acres, of which 64.7 acres at the east end is in Section 11 and 41.7 acres at the west end is in Section 10. It also shows in the northeast corner a line indicating the south boundary of another island northwest of the Curren Island, and gives 44.60 acres area, which island the plaintiff, Leroy E. Curren, had purchased from Nils Brunzell for $50 on June 21, 1934.

The plaintiff testified that at the time of the trial he was living at Palmer, Nebraska; that in 1932 he was living at Elm Creek, and in December he moved out

on the island now called in this opinion Curren Island. Plaintiff said that when he originally moved on the island he intended to homestead it, and filed an application in the Washington Land Office, but they said there was not enough land to justify a homestead, and he would have to advance around $600 for the Department to come out and determine whether a survey should be made. Plaintiff then decided that if he stayed there long enough he could get title to it by an action to quiet title.

He first built a house 22 x 14, and in 1934 an addition 12 x 14, giving a chattel mortgage, filed May 9, 1934, on the house for $25 to secure payment of the addition. Plaintiff then built a place for chickens, ducks, and geese. He testified that the island had numerous cottonwood trees on it, some of them three feet in diameter, also ash and willow trees, and grapevines. In 1933 he began to clear off brush, and also sold wood and timber from the island.

He testified that he lived on the island continuously until 1937. He said he drove through the defendant Crawford's pasture to get in and out to the river, and left his car on the section line on the south bank; that Mary Crawford (now deceased) rode out on horseback to the island in 1934 and told him there was nothing in the river that they were interested in. He said that he fenced in a place in 1934, pastured some cattle in it for two months at $1.25 a head a month, and that he also did commercial trapping on the island. In 1935 plaintiff was working on the Sutherland project, but came to the island on week ends. His father, Jack S. Curren, who had lived in Palmer since 1938, was out at the Curren Island several times a month in 1935. He raised some potatoes and onions there on three patches of cleared land of possibly six or seven acres, but the father's health was such that he could not garden it the next year, and in 1938 he moved from Elm Creek to Palmer.

Plaintiff testified that when he registered for the draft

in the army he gave his legal address or residence as San Gabriel, California, where he was working at that time.

In 1940 plaintiff went to Kingman, Arizona, and worked until May, then went to Long Beach and worked on a navy base until the summer of 1942, was then sent by the Government to the West Indies and worked there until the fall of 1942, when he enlisted in the Marine Corps. He was paid off in the summer of 1943 on a medical disability because he had had his right leg broken, and they discharged him. When he got his furlough in 1943 he came back and repaired the building on the island, as there had been a hailstorm and the roof was in bad shape. He was there about two weeks.

Plaintiff testified that when he was away George Neidigh occupied the island. He was nearing 80 years of age. Plaintiff gave him use of the place for cleaning it up and burning it off so there would be no danger of fire. He kept the keys to the house until in 1945, but Mr. Neidigh also had a home in town, and also had a garden in town. The daughter of this old man objected very much to his living out there alone on the island. It is not shown how frequently the old man made trips out to the island, who took him out, or how he got there, or how long he stayed at any time. Plaintiff testified that during these years he left his household goods there and his winter clothing while he was working in a warmer climate.

The entire 106 acres of this island were never used by plaintiff, but only three small garden patches for a year or two, the clearing made around the house, and land for some cattle pastured for two months of one year.

The evidence discloses that others used the land for various purposes, such as cutting wood, picking grapes, and many hunted on the island. Dr. Peterson, one of the defendants, put a good fence across the island, separating his 41.7 acres of the west half of the island, and pastured it.

As early as 1935 the plaintiff began taking jobs and living at other places, as herein set out, and remaining away until he returned for a couple of weeks in 1943 and repaired the roof of the cabin.

In 23 Neb. Law Review, p. 1, we find the first number of an exhaustive article by the late Dean Foster on "Nebraska Law of Adverse Possession," buttressed by the decisions of this and other courts, and by authoritative texts, and in that article is discussed the various requirements to secure title to land by this means. The possession must be actual; it must include the physical control of the land adversely; it must be exclusive; and it must be continuous for a period of ten years.

These years of absence are attempted to be filled in by the fact that the plaintiff gave the keys to the cabin to George Neidigh, of whom plaintiff's father testified: "Q He wasn't in a position to do any active farming? A Oh, No. He just liked to be out there and do these things for the sake of being out there and being out of town."

The plaintiff cited the case of Cassens v. Wisner, 122 Neb. 408, 240 N. W. 526, for authority to support his adverse possession of Curren Island. An examination of this case shows that the land was ranch or grazing land in McPherson County, a small portion of which was tilled, while hay was cut from another portion, and the whole 80 acres were pastured continuously year after year.

Wells v. Tietge, 143 Neb. 230, 9 N. W. 2d 180, is a case in certain respects similar to the one at bar. There three islands were involved. A shack or cabin was built on the island, with a cement floor, and underbrush was cleaned away. It was used for week ends during the hunting and fishing seasons and also for picnicking, and during most of the year was continuously used on Sundays for such purposes. This court held that this use of the island had not ripened into a title by adverse possession.

Defendant Dr. Peterson in 1940 built a one-wire electrified fence, extending from his deeded land on the south bank onto the Curren Island, and the next spring changed it into a regular fence straight out on the island on his east line of Section 10, as shown in exhibit No. 20. He has had cattle out there every year thereafter.

We do not think that the evidence, in the light of the legal and factual requirements for establishment of title to land by adverse possession, is sufficient to sustain a decree in favor of plaintiff. See McGowan v. Neimann, 144 Neb. 652, 14 N. W. 2d 326; Frank v. Smith, 138 Neb. 382, 293 N. W. 329, 134 A. L. R. 458; Lantry v. Wolff, 49 Neb. 374, 68 N. W. 494; Conkey v. Knudsen, 135 Neb. 890, 284 N. W. 737. Therefore, the finding of the court that the plaintiff had failed to establish title to the lands in question was sustained by the record.

A further ground of error assigned by plaintiff as ground for reversal is that the trial court erred in overruling his motion to amend his petition to conform to the evidence. This assignment of error is discussed at such length in the briefs that it requires a rather full consideration.

In this connection the record discloses that on November 30, 1946, the plaintiff filed a motion asking that he be permitted to amend his petition to conform to the proof upon the trial of the case by adding a third paragraph thereto, substantially as follows: That the plaintiff is the owner in fee simple of Lots 1 and 2 in Section 11, Township 8, Range 19, in Dawson County, and that his ownership of said premises is of record in the office of the Register of Deeds; that a portion of said Lots 1 and 2 forms the northeasterly part of the island described in paragraph 1 of plaintiff's petition, and that said Lots 1 and 2 were surveyed in the original United States government survey; that the remainder of the premises described in paragraph 1 has, since the making of the

original government survey, been formed as accretion land physically attached to plaintiff's said deeded land, and that the plaintiff is now the owner of all said lands described in paragraph 1; that said Lots 1 and 2 form a portion of the southerly boundary of a surveyed island shown on the original government survey, which is commonly known as Lloyd's Island; that the southerly boundary of Lloyd's Island was shown on the original government survey to be bounded by a wide channel of the Platte River; and that all of the lands described in paragraph 1 of plaintiff's petition are located to the north of the center or thread of said channel.

Examination discloses that there was some evidence to support the allegations of the proposed amendment to the petition.

The decree of the district court was entered on December 17, 1946, setting forth that the trial began October 2, 1946, and then adjourned until an additional survey was made; that on November 18 the trial continued and further evidence was received and argument made, and the cause taken under advisement; that on December 10 the matter came on for trial, and the court found that the motion of plaintiff to be permitted to add a third paragraph to his petition, to conform with the proof adduced on the trial, should be overruled.

The statute in reference to amendments reads as follows: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. Whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made con-

formable thereto by amendment." § 25-852, R. S. 1943.

The plaintiff urges that the plain intent of this statute is to determine in one ·action all conflicting claims of the parties, citing Hanson v. Hanson, 78 Neb. 584, 111 N. W. 368; Draper v. Taylor, 58 Neb. 787, 79 N. W. 709; that in all cases an amendment should be allowed if it is in furtherance of justice (Zancanella v. Omaha & C. B. Street Ry. Co., 96 Neb. 596, 148 N. W. 158); and should be allowed even after the close of the evidence if the adverse party is not prejudiced (Blondel v. Bolander, 80 Neb. 531, 114 N. W. 574). With this contention we are in accord, and since there was evidence in support of the theory contained in the proposed amendment, it should have been allowed.

When a motion has been made to amend a pleading to include a material ·allegation upon which some evidence has been received, such amendment should be allowed. Of course, whether or not the evidence is sufficient to support a favorable finding thereon remains a question of fact.

When, in an equity action, such motion is improperly overruled by the trial court and the case is before us for review, we will consider the pleading as having been amended and determine the question of the sufficiency of the evidence in support thereof.

On the question of the evidence as to whether or not plaintiff is entitled to anything based on evidence of accretion, plaintiff's own evidence in support of his own original claim is inconsistent with any such claim and with the entire theory on which the case was at first tried.

The plaintiff endeavored to prove that Curren Island had always been a separate island, uncharted in the original United States government survey. He attempted to homestead the island; contended it had always been' there; and that there were old cottonwood trees three feet in diameter on the island. He said there

was a stream between this island and the island to the north.

In the cross-examination by counsel for plaintiff of the defendant Dr. Peterson, the counsel stated definitely that the plaintiff was claiming his right by adverse possession only. It was not until after the conclusion of the trial on the original theory that plaintiff indicated a desire to add a third paragraph to his petition and claim that Curren Island is made up of accretions from Brunzell Island, which he owns, and that Curren Island is physically attached to his deeded island.

It thus became important to determine just where the thread of the river was at this point during these years. Veron Johnson, who was born on defendant Petersons' island, and lived there until he was a grown man, testified that the main stream was right south of Lloyd's Island. As the river would go dry, that was the place where there was the best fishing, and that was true all of the time that he knew the river.

Defendant Dr. Peterson testified that the main flow of the river has always been right south of Lloyd's Island; that it was there when he was a boy and it is there today.

Art Peterson testified that when the river was going dry, or practically dry, there would always be quite a little water and fishing along the boundary line of Lloyd's Island on the south.

A. W. Peterson, who is an uncle of Dr. Peterson, the defendant, testified that the channel south of Lloyd's Island was the one that went dry last.

Dr. Peterson testified that the south bank of Lloyd's Island is unchanged, and that in the main body of water the last channel to go dry was between Lloyd's Island and Curren Island.

This court has recently defined the thread, or center, of a stream as that line which would give owners on either side access to the water at its lowest ebb. See State v. Ecklund, 147 Neb. 508, 23 N. W. 2d 782; Higgins v. Adelson, 131 Neb. 820, 270 N. W. 502.

Factually and by evidence, the claim of the amendment was presented fully and a finding thereon made in the decree, which finding was against the plaintiff. On a review of that finding and the evidence in support of it here, it is clear that the finding was correct. The plaintiff failed to sustain the claim contended for in the proposed amendment.

In its decree the court found generally in favor of the defendants and against the plaintiff, finding that there has been no adverse possession of the island in controversy by the plaintiff. The court found that the center of the stream is north of the island in controversy and south of the island commonly known as Lloyd's Island. The court found that the cross-petitioners, as the owners of the lots set out in their cross-petition, are entitled to all lands and accretions from the boundaries of their lots to the center of the stream, and that the island described in plaintiff's petition is within these boundaries and is owned by the defendants as riparian owners in accordance with their separate cross-petitions. The court found for the cross-petitioners and quieted the title of the lands in them as prayed in their respective prayers of their cross-petitions.

It is clear from this record that the evidence is not sufficient to sustain the claim based on plaintiff's proposed amendment, and the refusal to allow it was error without prejudice. Therefore the judgment of the trial court is affirmed.

AFFIRMED.