DAVID O. STILLWELL, APPELLEE, v. DENNIS SCHMOKER ET AL., APPELLANTS.

122 N. W. 2d 538

Filed July 12, 1963. No. 35428.

Tye, Worlock, Knapp & Tye, for appellants.

Mitchell, Taylor & Beatty, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

Plaintiff brought this action to recover for personal injuries and property damage sustained in a collision

at the intersection of U. S. Highway No. 30 and Avenue E in Kearney, Nebraska. Judgment was rendered for plaintiff, and, upon the overruling of their motion for a new trial, defendants perfected their appeal to this court.

David O. Stillwell, the plaintiff and appellee, will be hereinafter referred to as plaintiff. Defendants and appellants are Dennis Schmoker, a minor, and his father, Donald Schmoker. At the time of the collision Dennis was driving the vehicle which was owned by his father, and any recovery against the father is dependent upon recovery against Dennis. We will hereinafter refer to Dennis Schmoker as defendant, and to both Schmokers as defendants.

The collision occurred shortly after 5 p. m., on December 2, 1961. U. S. Highway No. 30 is 60 feet 9 inches wide, runs east and west, and is divided between intersections by an 8 foot 9 inch concrete median strip, with two lanes of traffic both east and west. Each lane is 13 feet wide and they are divided by a white stripe. The median strip on the west at this intersection is 16 feet 4 inches east of the west curb of Avenue E. Plaintiff was driving west on U. S. Highway No. 30. Defendant had come from the west on U. S. Highway No. 30, and had either made or was in the process of making a left-hand turn when the collision occurred. The posted speed limit for the area is 35 miles per hour.

An officer who investigated the collision testified that when he arrived at the scene, the two cars had the westbound traffic lanes blocked. Plaintiff's car, a 1961 Valiant, was across the south lane of the westbound traffic headed north, and defendant's car, a 1953 Ford, was on an angle against the curb in the north lane, but the record does not disclose the direction in which it was headed. The concentration of debris was 23 feet south of the north curb and 22 feet 9 inches east of the west curb, or in the northwest quadrant of the intersection. There were no brake or skid marks visible. It was the officer's

testimony that both drivers told him they did not see the other car. Plaintiff testified he might have told the officer he did not see the defendant. Defendant testified he did not remember telling the officer he had not seen the plaintiff. From the exhibits it is evident that the front bumper of the plaintiff's car came in contact with the right front fender of the defendant's car, directly above the right front wheel.

Defendants set out 18 assignments of error. We comment on only four of them, Nos. 2, 3, 5, and 11, and will set out only enough of the testimony to understand the points involved. We do not pass on the merits or sufficiency of any of the other assignments.

Plaintiff testified he saw the defendant's car first when he was three houses back from the intersection. Defendant's car was then three car lengths from the intersection. He saw it a second time just before entering the intersection and the defendant had cut the corner and was turning and pulling into the intersection. "He had made his turn and he was just coming into the intersection." The collision then occurred. Plaintiff testified he had been driving 25 to 35 miles an hour before going into the intersection. He did not apply his brakes and did not have time to do anything before the impact.

Defendant testified that he was driving between 15 and 20 miles an hour approaching Avenue E; that when he started into the intersection he first observed the plaintiff's car a block away; that he braked his car before going into the intersection and cut his speed down to 10 miles an hour. On cross-examination he testified he was at the edge of the island to the west, ready to make his turn when he first observed the plaintiff's car a block away. He did not look again until he was in the intersection and was crossing the white line dividing the two lanes of westbound traffic. At that time, his car "had fairly well straightened out, going pretty much north." He testified plaintiff then had his face turned away and it was pointing down toward the floor board

of the car. On the speed of the plaintiff's car, the following testimony of defendant was offered by the plaintiff from defendant's deposition as admissions against interest: "Q So you couldn't tell from that either, could you, as to his rate of speed? A Oh, somewhat you could. It seemed that he was moving at a faster rate of speed than he should have at that place. Q Well, Dennis, you are not saying that you saw him more than just a few feet before he hit you? A No, I'm not saying that, but he approached me too fast. I don't know, maybe it happens quick, but it seems to me that he hit me at a rather fast speed."

Defendants' second assignment relates to permitting the investigating officer to testify over objection as to the location of the point of impact. The question asked was as follows: "Q From your observation of the debris, the positions of the vehicles, and your examination of the scene of the accident, and from your examination of hundreds of accidents in the past, do you have an opinion as to which lane of traffic—the north or south lane of westbound traffic the collision occurred in? Mr. Knapp: Objected to, no proper and sufficient foundation laid, and calling for the conclusion of the witness. The Court: He may answer. A I would say that it happened in the south lane of the westbound traffic." The trial court had earlier sustained an objection to a question seeking an opinion of this witness as to the actual point of impact. This question is tarred with the same vice. The physical facts from which the question was to be answered were all presented to the jury. The issue did not call for the opinion of an expert. It was an ultimate fact for the determination of the jury, and the objection should have been sustained.

As we said in Danner v. Walters, 154 Neb. 506, 48 N. W. 2d 635: "One of the objections most frequently raised against the admission of expert opinion testimony is that the opinion offered invades the province of the jury. This objection is indeed the basis of the general

rule of evidence that the testimony of witnesses must be confined to concrete facts perceived by the use of their senses as distinguished from opinions and conclusions deducible from evidentiary facts. In many cases it is asserted as a broad general rule, often assumed to be an inflexible rule of law, that while an expert may be permitted to express his opinion, or even his belief, he cannot give his opinion upon the precise or ultimate fact in issue before the jury, which must be determined by it. See, 20 Am. Jur., Evidence, § 782, p. 653, and cases cited under note 16 thereof; Neal v. Missouri P. Ry. Co., 98 Neb. 460, 153 N. W. 492; Gross v. Omaha & C. B. Street Ry. Co., 96 Neb. 390, 147 N. W. 1121, L. R. A. 1915A 742.

"A witness may describe the marks that he has observed near the place of an accident. The inference to be drawn from the testimony regarding such tire marks, skid marks, or scratches is solely the province of the jury."

Defendants' third assignment is directed at the following portion of instruction No. 1 given by the trial court: "The evidence in this case estiblishes (sic) that on December 2nd, 1961, at about 5:30 P. M., a collision occured (sic) between an automobile driven by David Stillwell westerly on U. S. Highway 30 in the City of Kearney, and an automobile driven by Dennis Schmoker *in an easterly direction and turning left* in the intersection of Highway 30 and Avenue 'E'." (Italics supplied.)

It is defendants' contention that the evidence indicates that defendant had made his turn and his car was headed nearly straight north, and that the statement he was driving easterly, turning left, was prejudicial when read in conjunction with certain factors respecting left-hand turns emphasized in the instructions. We do not believe the jury could have been misled by this statement when considered with the other instructions, but as phrased it does not give the defendants the full

benefit of the plaintiff's admission that the defendant's car had made its turn.

Defendants' assignments Nos. 5 and 11 are directed at the issue of speed and will be considered together. Assignment No. 5 complains about instruction No. 8 given by the trial court. Assignment No. 11 complains about the failure to give defendants' tendered instruction No. 4 which embraced defendants' theory on the relevancy of speed. The trial court's instruction No. 8 on speed is as follows: "You are instructed that the maximum speed limit under the ordinances of the City of Kearney on East 25th Street, being U. S. Highway Number 30, between Avenue D and Avenue G is 35 miles per hour. Under the ordinances of the City of Kearney there is a further provision that at intersections the speed should be 15 miles per hour. However, between Avenue D and Avenue G on 25th Street the streets are posted with 35 miles per hour signs only, and the court as a matter of law rules that the 35 miles per hour speed limit was the maximum legal speed at the place of the accident here in question.

"There is no evidence in this case that the maximum speed laws have been violated by either party in this case, and this instruction is given only to remove any confusion from the jurors' minds as to what the legal speed was at this location, this confusion may having (sic) arisen from various claims and testimony given during the course of the trial."

Defendants' tendered instruction No. 4 was as follows: "You are instructed that the section of the traffic ordinances of the City of Kearney, Nebraska, in full force and effect at the time of this accident and applicable to this case provide as follows:

" 'Sec. 19.16 Speed Limitation. No person shall drive any vehicle on any street within the city at a rate of speed greater than is reasonable and proper having regard for the traffic and conditions of the street, and in any event at a rate of speed not greater

than 15 miles per hour within the congested district, or at a rate of speed not greater than 25 miles per hour outside the congested district, except for certain city streets that are presently designated as part of Federal Highway No. 30, and for such streets the rate of speed shall be . . . from Twenty-fifth Street and 'D' Avenue to Twenty-fifth Street and 'N' Avenue at a rate of speed not greater than 35 miles per hour; and when traversing intersections bridges, or sharp curves the person driving such motor vehicle shall not drive at a rate of speed greater than 15 miles per hour and shall have such vehicle under complete control; . . . '

"You are instructed that the Statutes of the State of Nebraska so far as they are applicable to this case, provide as follows:

" 'The driver of a vehicle approaching but not having entered an intersection shall yield the right-of-way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning left was (sic) given a plaintly (sic) visible signal of intention to turn. The driver of any vehicle traveling at an unlawful rate of speed shall forfeit any right-of-way he might otherwise have hereunder.'

" 'No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing.'

" 'No person shall drive a vehicle in any residence district within any city or village at a speed greater than 25 miles per hour unless, by the ordinance of such city of (sic) village, a greater rate of speed is specifically permitted.'

" 'The fact that the speed of a vehicle is lower than the prima facie limit shall not relieve the driver from the duty to decrease when approaching and crossing an intersection, . . . or when special hazards exist with respect to other traffic or highway conditions, and speed shall be decreased as may be necessary to avoid collid-

ing with any vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.'

"You are instructed that if you find from the evidence that either the plaintiff or the defendant violated any of the provisions of the above ordinances of the city or statutes of the State of Nebraska referred to in this instruction, the violation thereof would not be, in and of itself, negligence on the part of the violator, but would be evidence of negligence to be considered by you, together with all other evidence, facts and circumstances of the case, to determine whether or not such violator was guilty of negligence."

Defendants in their answer and cross-petition pleaded several specific acts of negligence, including the following: "5. In that the plaintiff, at the time and place in question, was driving and operating a vehicle at a rate of speed greater than that which was reasonable and proper under the circumstances and conditions of traffic then existing upon the highways, contrary to the laws of the State of Nebraska, Sec. 39-7,108, R. R. S. and the ordinances of the City of Kearney, Chapter 19, Art. I, Sec. 19.15 and Chapter 19, Art. II, Sec. 19.16.

"6. In that the plaintiff, at the time and place in question, failed to slow his automobile upon approaching and entering an intersection, contrary to the laws of the State of Nebraska and the ordinances of the City of Kearney."

The only instruction involving speed given by the trial court is instruction No. 8, set out above. This instruction undertook to give the maximum speed for vehicles at the place of the accident. However, it did not include material applicable limitations and qualifications, and is prejudicially erroneous. As we said in Harding v. Hoffman, 158 Neb. 86, 62 N. W. 2d 333: "An instruction reciting the provisions of statutes regulating and controlling the speed of motor vehicles should include therein all the material applicable statu-

tory' limitations and qualifications to enable a jury to observe and understand the duty of drivers at the time and place in question." The instructions tendered by the defendants set out certain proper qualifications in both the applicable ordinances and the statute. The applicable ordinance provided: "No person shall drive any vehicle on any street within the city at a rate of speed greater than is reasonable and proper having regard for the traffic and conditions of the street, * * *."

Section 39-7,108, R. S. Supp., 1961, provides in part: "The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, * * * or when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care; * * *."

Defendants specifically pleaded that the plaintiff at the time and place in question was operating his vehicle at a rate of speed greater than was reasonable and proper under the circumstances, and that he failed to slow his automobile on entering the intersection. This was a part of their defense. The trial court omitted these allegations from the instruction delineating the allegations of the parties, and by instruction No. 8 eliminated any question of speed in any form from the case. In effect, instruction No. 8 directed for the plaintiff on that phase of the defendants' defense.

Does the record reveal evidence from which the jury might find excessive speed? If it were to believe the defendant's statement that when he was turning into the intersection plaintiff was 300 feet east of the intersection, it is evident it would be necessary to find that plaintiff was driving in excess of 35 miles per hour. There are other inferences in the record from which a

jury might have questioned plaintiff's speed which it is not necessary to discuss, because this testimony was sufficient to require the court to cover this phase of the defendants' defense.

This case is controlled by Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758, in which we held: "Although the evidence may be entirely circumstantial as to the rate of speed at which a motor vehicle was operated, it may be sufficient to support a reasonable conclusion reached by the jury on the issue of negligence. Circumstances connected with an accident may be sufficient to overcome direct evidence as to the speed of a motor vehicle." At page 599 of that case, we said: "Appellant alleged in her petition that appellee operated his truck at a greater rate of speed than was reasonable and proper, having regard for the condition of the highway, and the traffic thereon. She now contends the trial court prejudicially erred in failing to submit this issue to the jury in view of the evidence adduced.

"In this regard, 'It is the duty of the trial court, without request, to instruct the jury on each issue presented by the pleadings and supported by evidence. A litigant is entitled to have the jury instructed as to his theory of the case as shown by pleadings and evidence, and a failure to do so is prejudicial.' Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571."

In Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112, we held: "The lawfulness of the speed of a motor vehicle within the prima facie limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing."

In Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701, we held: "Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. All that the law requires is that the facts and circumstances proved, together with the inferences that may be properly drawn therefrom, shall

indicate with reasonable certainty the negligent act charged." This is true as to the specifications of speed, as well as to any other specifications of negligence claimed. Coyle v. Stopak, *supra*.

We have come to the conclusion that the defendants are entitled to a new trial and that the judgment of the trial court overruling their motion was in error. We therefore reverse the judgment of the trial court denying defendants a new trial, and remand the cause with directions that defendants' motion for a new trial be sustained, and that they be granted a new trial.

REVERSED AND REMANDED WITH DIRECTIONS.