DENNIS RAWLINGS, APPELLANT, v. ABBIE ANDERSEN, APPELLEE.

240 N. W. 2d 568

Filed April 1, 1976. No. 40189.

Warren C. Schrempp, Thomas G. McQuade, and Richard E. Shugrue of Schrempp, Dinsmore & McQuade, for appellant.

Eugene P. Welch of Gross, Welch, Vinardi, Kauffman & Day, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

Plaintiff, Dennis Rawlings, appeals to this court from a verdict of the jury and judgment entered thereon in favor of the defendant, Abbie Andersen, in an action to recover damages for injuries sustained in a collision between his motorcycle and the defendant's Volkswagen automobile. The collision occurred at the intersection of Center and 40th Streets in the City of Omaha at about 4:15 p.m., on August 7, 1972. At the time of the collision the plaintiff was traveling east on Center Street. The defendant was coming from the east on Center Street and was about to make or was in the process of making a left-hand turn onto 40th Street. Center Street, at the accident scene, has four traffic lanes, two for eastbound and two for westbound traffic. West of 40th Street there is a cement median dividing the eastbound and westbound lanes. There is no cement median immediately east of 40th Street, but a median and left-turn lane are painted on the street's surface.

The trial court submitted to the jury: (1) Determination of the defendant's negligence based upon evidence of failure to maintain a proper lookout, failure to have her vehicle under proper control, and failure to yield the right-of-way to the defendant; and (2) plaintiff's contributory negligence based upon evidence of failure to maintain a proper lookout, failure to have his motorcycle under proper control, and excessive speed under the circumstances. The jury rendered a general verdict for the defendant.

On appeal to this court the plaintiff makes the following assignments of error: (1) The court erred in giving the jury instructions in conflict with the physical facts of the case, since those facts are sufficiently clear to eliminate the question of point of impact and to justify a finding that the defendant was, as a matter of law, executing a left turn at the time of the collision and was in the plaintiff's line of travel. (2) The court erred in refusing to allow a police division traffic investigator to testify as to the point of impact of the two vehicles. (3) The court erred in permitting testimony from the plaintiff's physician that 17 months prior to the accident the plaintiff had told his doctor that he was at that time consuming daily "a fifth of booze." (4) The court erred in permitting a witness to testify to the speed limit on Center Street at the point where the collision occurred. (5) The court erred in its refusal to require a witness at the taking of a pretrial discovery deposition to produce a statement used by the witness to refresh her recollection. (6) The court erred in refusing the plaintiff's request made at the end of trial to amend his petition to allege the defendant at the time of impact was on the wrong side of the street and in not giving an instruction with reference thereto.

We treat the assignments in the order we have listed them. At an instruction conference, counsel for the plaintiff, in response to a question from the court, said: "Just that we except to all Instructions in conflict with

the physical facts of the case, which in this case we deem are sufficiently clear to eliminate the question of point of impact, and sufficiently clear and persuasive as to justify a finding that the defendant was, as a matter of fact, executing a left turn at the time of the collision and was in the plaintiff's line of travel." The following then occurred: "THE COURT: There is nothing in the Instructions where I have made any comment on that. The Court is confused with your objections here. If you can point out the Instructions that are incorrect, we will make the corrections, or at least consider your objections to the specific Instructions, but you haven't done so. MR. SCHREMPP: I can't point out a specific Instruction. THE COURT: That's just your general theory? MR. SCHREMPP: Right. THE COURT: The record will so note. If it is an objection, it is overruled." The plaintiff submitted no requested instruction on the point discussed.

The plaintiff's position apparently is that the physical evidence is so conclusive the court should have instructed the jury on its own motion that the collision occurred south of the centerline of Center Street. The evidence was clearly sufficient to permit the jury to so find and nothing in the instructions given would have prevented the jury from coming to such a conclusion. However, such a determination by the jury would not have been determinative of the litigation for the jury could also have found that the defendant was not negligent in making a left-hand turn at the time and place she did, and that the collision was caused by the plaintiff's contributory negligence more than slight. The plaintiff, to support his argument, relies upon the opinions of this court in Elwood v. Schlank, 126 Neb. 213, 252 N. W. 828: Miller v. Arends, 191 Neb. 494, 215 N. W. 2d 891; and the dissent of Johnsen, J., in Ross v. Carroll, 138 Neb. 1, 291 N. W. 726. In all these cases the question which was determinative of liability was on which side of the roadway did the collision occur. In

Miller v. Arends, *supra,* we said that where the undisputed physical facts demonstrate the collision out of which the injuries arose was not caused by the negligence of the defendant, the evidence will not support a verdict for the plaintiff. That principle is not applicable in this case. Here the fact that the collision may have occurred (and if this court were the original trier of fact we would say it probably did occur) south of the centerline was not conclusive of the defendant's negligence and certainly not conclusive of the absence of contributory negligence on the part of the plaintiff.

The defendant's evidence indicated that the defendant entered the left-turn lane east of the intersection with the intention of making a left turn onto 40th Street. She testified she had just begun the turn with perhaps her front wheels just south of the centerline when the plaintiff's motorcycle suddenly appeared weaving and at high speed from between eastbound cars. She stated she stopped her car and the collision occurred. The testimony of a motorist following the plaintiff tends to support this version. Other testimony and evidence would indicate that she was further into her turn with the front of her car pointed southwest and that the point of impact may have been at about the dividing line between the two eastbound traffic lanes and near the east edge of the intersection. Evidence tending to support that version comes from other witnesses and is reinforced by the presence of what the investigating officer stated was under-carriage dirt on the street located at about the dividing line between the eastbound lanes and a few feet east of the east line of the intersection. This debris is shown in some of the photographs received in evidence. When the collision occurred the plaintiff and his motorcycle flew in the air. The motorcycle broke into two parts, one part landing at the base of a tree immediately adjacent to and south of the sidewalk on the south side of Center Street, 46 feet east of the east line of 40th Street; and the second

part coming to rest also at the south edge of the sidewalk, but somewhat west of the tree. The evidence does not show clearly where the plaintiff landed. Photos received in evidence would indicate that the motorcycle struck the front of the automobile at a point about a foot left of center of the bumper. Both vehicles were severely damaged. Defendant testified that her vehicle was driven backward by the collision. The plaintiff did not testify as to the collision because of amnesia. His last recollection was that he was headed toward the 40th Street intersection in the southernmost eastbound lane of traffic shortly before the collision occurred. There is no physical evidence to show the precise line of travel of the motorcycle immediately before the collision. It is evident that the direction of flight of the motorcycle after impact was dependent upon the relative position and line of travel of the two vehicles at impact. There is nothing in the nature of the physical damage to the Volkswagen from which these matters can be conclusively determined. This was a question for the jury to decide.

The instructions given by the court correctly informed the jury of the law applicable to the case. No attack is made on the correctness of these instructions. They did not preclude the jury from finding that the collision occurred south of the centerline and near the east edge of the intersection. If the plaintiff felt that he was entitled to a more specific instruction as to some undisputed fact shown by physical evidence, it was up to him to make such a request in writing. A party may not complain that correct instructions are not sufficiently specific when no request is made for more specific instructions. Thorpe v. Zwonechek, 177 Neb. 504, 129 N. W. 2d 483; Dittrick v. Deuel, 181 Neb. 428, 149 N. W. 2d 57. The plaintiff's first assignment is without merit.

During the course of the direct examination of the police officer who made the on-the-scene investigation of the collision, plaintiff laid a foundation to show that

the officer's duties included automobile accident investigation and that he had examined the scene of about two such accidents daily for a period of 4 years. He was then asked if he had sufficient experience to determine the significance of debris at an accident scene. The officer answered in the affirmative. He was then asked: "What do you understand with respect to debris in connection with any significance in an accident investigation?" Objection was made and sustained. He was permitted to testify to the location of debris and its nature, viz: ". . . it was a substance similar to that found under the undercarriage of vehicles." He stated in response to a question that he did not know where it came from. He stated it was present when he arrived at the scene. He was not permitted to testify as to the time the deposit of debris was made nor to the position of the vehicles at the time of impact. He was not permitted to give his opinion as to where on the street the vehicles collided. Objections to questions designed to elicit the above information were made and sustained on the basis that they called for the conclusion of the witness and that sufficient and proper foundation had not been laid.

Heretofore we have held it has not ordinarily been permissible for an accident investigator to give his opinion as to the point of impact. Stillwell v. Schmoker, 175 Neb. 595, 122 N. W. 2d 538; Caves v. Barnes, 178 Neb. 103, 132 N. W. 2d 310. The reason usually given is that the witness may not give his opinion to the ultimate issue which is for determination by the jury. The plaintiff urges we apply sections 27-702, 27-703, and 27-704, R. S. Supp., 1975, which became law August 24, 1975. This case was tried previous to the effective date of the new evidence code. We ought not, unless justice requires it, reverse the decision of the trial court for following rules of evidence in effect at the time of trial even though legislative change then awaits only the effective date of the act. Justice does not require we do so

in this case. We simply point out that, although the new rules abolish the "ultimate issue" rule, nonetheless under the provisions of section 27-702, R. S. Supp., 1975, the admissibility of such testimony depends upon whether the "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." It is for the trial court to make the initial decision on whether the testimony will "assist" the trier of fact. The soundness of its determination, of course, depends upon the qualifications of the witness, the nature of the issue on which the opinion is sought, the foundation laid, and the particular facts of the case. Were we to say that section 27-702, R. S. Supp., 1975, is applicable, we would not be likely to disturb the discretion of the trial court in this instance. The plaintiff's second assignment is not meritorious.

The plaintiff suffered severe, permanent injuries as a result of the collision. Life expectancy tables were received for the purpose of assisting the jury in determining damages for such permanent injuries. During cross-examination of the plaintiff's physician the defendant's counsel sought to elicit information as to the plaintiff's previous habits which might affect his health and longevity. Questions concerning smoking habits were asked and answered. The following then occurred: "Q. Did he indicate to you a history with respect to the use of alcohol? A. Yes. Q. To the extent that that would affect his health? A. Probably." Counsel then asked the following question: "Would you tell us what he had indicated the amount of alcohol that he was using?" Objection was made and after the court determined by inquiry of defense counsel that his purpose was to determine plaintiff's "condition of health," the following occurred: "Q. Let me ask it this way as a matter of preliminary investigation: The amount of alcohol that he told you he consumed, one which if it was on a prolonged period of time would that affect his health?" After some discussion the doctor answered, "Yes." Then

came the following: "Q. How much did he take at that time when he was consuming the alcohol?" Objection was made, "there being no showing and no claim by anyone that there was any influence of alcohol in connection with this accident." The court then overruled the objection and stated that the only basis was the "health problem." The doctor then answered as follows: "On January 12, 1971 in the History we had taken he told me that he was drinking a fifth of booze a day." The following colloquy then took place: "THE COURT: . . . he is trying to show the comparison of the health prior to the accident and after the accident. Is that what you are attempting to do? MR. WELCH: Yes, sir. It has no bearing upon the happening of the accident, merely upon his health. THE COURT: It is on that basis that the court is admitting this evidence and the jury is admonished to keep that in mind in their deliberations." In an action where permanent, personal injury is claimed, the defendant may show as affecting damages that the plaintiff was a person of intemperate habits. Century "21" Shows v. Owens, 400 F. 2d 603; 9 A. L. R. 1406. Plaintiff's third assignment is not meritorious.

A motorist who witnessed the collision and who was traveling west on Center Street about 1/2 to 3/4 block from the collision site was permitted over objection to testify that he thought the speed limit at the scene of the accident was 35 miles per hour. Later in the trial an Omaha ordinance was received in evidence which provided among other things: ". . . nor in any case at a greater rate of speed than twenty-five miles per hour, except on street or streets where a greater rate of speed is permitted, as designated by signs installed along such street or streets." Objection to the witness' testimony was solely upon the ground that he should not be permitted to testify "what the law is." There was no objection on the basis of either insufficient foundation or that the testimony was not the best evidence. There

was no error in admitting this testimony. A witness may testify as to the posted speed limit at a given location if an appropriate foundation is laid. The plaintiff's fourth assignment of error is not meritorious.

The plaintiff's fifth assignment relates to an order made by the trial court during the taking by the plaintiff of a pretrial discovery deposition of one of the defendant's listed witnesses, denying the production of a written statement previously made by the witness. This witness later testified at the trial. During the deposition the plaintiff's counsel asked the witness if her statement had been taken by anyone after the accident. It developed that she then had the statement in her possession. Plaintiff's counsel asked to see it. Objection was made and almost immediately a ruling was obtained from the same judge who later presided at trial. He denied production because there was no showing of good cause.

Plaintiff relies upon section 27-612, R. S. Supp., 1975, effective August 24, 1975. That section is in part as follows: Rule 612. ˙Writing used to refresh memory. "If a witness uses a writing to refresh his memory for the purpose of testifying, either before or while testifying, an adverse party is entitled to have it produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness." This rule codifies in part previous law and in part enlarges previous rules. See Art. VI, Witnesses, p. 19 et seq., Nebraska Rules of Evidence, 1975, Nebraska Continuing Legal Education, Inc. This rule continues the former rule requiring that any writing used by a witness to refresh his recollection at a hearing must be produced for an adverse party. The rule adds to previous law by requiring, among other things, the production of any statement used by the witness to refresh his recollection previous to testifying and by permitting the adverse party to introduce the parts of the statement which re-

late to the testimony of the witness. Under the rule, however, a precondition to the production and use is the requirement that it has been used to refresh the witness' recollection. In this case the gist of the witness' testimony on the point of refreshment was that she just glanced at it. "What I looked at was the date." There is here no disagreement involving either the date of the accident, the witness' presence at the time, nor is the date of the taking of the statement relevant. Even if the changes in the law are to be applied before the effective date of the act, the rule is not applicable here because the witness had not refreshed her recollection by means of the statement. The trial court did not err in its ruling.

The last assignment relates to the trial court's refusal to permit the plaintiff at the end of trial to amend his petition to include an allegation that at the time of the collision the defendant was operating her vehicle on the wrong side of the street. The court gave as the reason for its ruling: "There is no evidence in the record that the defendant was operating her car on the wrong side of the street, under Nebraska law . . . . The evidence is that the defendant attempted to make a left turn at an intersection." In his brief the plaintiff states his contention as follows: "We contend that when an automobile 'cuts a corner' on a left hand turn rather than going beyond the center point of the intersection, that automobile is operating on the wrong side of the street rather than simply failing to yield the right of way on a properly executed left hand turn." No eyewitness testified that the defendant was driving her car south of the centerline as she approached the intersection. All the direct testimony is to the contrary.

An eastbound motorist whose car was passed by the motorcycle at "about the second entrance where you come out of Kilpatrick's on the north side" (the record indicates that entrance is 192 feet west of the west line of 40th Street), and whose view of the collision was ob-

structed by a car or cars ahead of her own car, but who saw the motorcycle flying in the air, testified that moments later after the accident when she passed the collision site the Volkswagen was in the inner eastbound lane of traffic, facing directly west, and that the defendant then drove her car to the curb immediately after the witness' car had passed. The photographs indicate that the Volkswagen after the collision was facing directly south with its front wheels against the curb. The photos and testimony also indicate that the debris previously mentioned was directly north of the rear of the car and north of the dividing line between the two eastbound traffic lanes. Any inference from the foregoing that the defendant was driving her car in the lane of traffic south of the centerline before the collision was entirely too speculative to require a wrong side of the street instruction. The court did properly instruct the jury on the law applicable to the proper manner of making left-hand turns at intersections. All the evidence indicating negligence on the part of the defendant was before the jury. It was properly able to consider under the instructions given whether the defendant was negligent in cutting the corner, and whether such negligence, if any, was the proximate cause of the accident. The trial court did not abuse its discretion in refusing the request to amend made at the end of trial. The courts may, in the furtherance of justice, either before or after the judgment, permit the amendment of a pleading by conforming the pleading to the facts proved. § 25-852, R. R. S. 1943. Justice did not require amendment in this case.

AFFIRMED.

BRODKEY, J., dissenting.

I would reverse and remand this case for a new trial. The record reveals that at the close of all the evidence, a conference was had between the court and counsel for the parties at which the following occurred: "MR. SCHREMPP: Comes now the plaintiff and at the close

of all of the evidence moves the Court for an Order allowing plaintiff to amend his Petition to allege that the defendant under the present state of the evidence — that there is evidence of the fact that the defendant was operating her vehicle on the wrong side of the street, and further requests the Court that on the allowance of such an amendment that the same be included as a specification of negligence in Instruction No. 2.

"THE COURT: There is no evidence in the record that the defendant was operating her car on the wrong side of the street, under Nebraska law operating on the wrong side of the road or street. The evidence is that the defendant attempted to make a left turn at an intersection. Overruled and denied. Your request is denied and your motion is overruled."

In this, I believe the court erred, as a review of the record reveals that there was testimony and evidence received during the trial from which the jury might well have concluded that the defendant, in fact, was driving on the wrong side of the street. This evidence exists apart from the evidence pointed out by counsel for the plaintiff relative to his claim that the defendant allegedly cut the corner in making a left-hand turn before reaching the east line of 40th Street as extended in a northerly direction through the intersection. I direct attention to the testimony of Ida Johnson, who was called as a witness for the defendant. She testified that on August 7, 1972, she was driving her car east on Center Street near the intersection of 40th and Center Streets at the time of the accident. She had stopped for a red light at 42nd and Center Streets, and when the light turned green she proceeded east in the right-hand lane. Shortly thereafter the plaintiff's motorcycle passed her on the left and swerved in front of her and then swerved out in the middle between the cars on both sides. She lost sight of the motorcycle when it was approximately 1/2 block ahead of her and the next time

she observed it it was going up in the air above the trees. She then proceeded through the intersection of 40th and Center Streets. She testified at that time the Volkswagen was stopped and to her left. She also testified that after she passed through the intersection, the driver of the Volkswagen moved it to the south curb, as shown in exhibit 2, which shows the Volkswagen with its front wheels against the south curb of Center Street. She went back to the scene of the accident and saw plaintiff lying in the street, and his motorcycle by a tree. The front of the Volkswagen was "mashed in." We add parenthetically at this point that exhibits 9, 10, and 29, colored photographs showing the damage to the Volkswagen, strongly indicate that the collision between the motorcycle and the Volkswagen was a head-on collision, as the hood of the Volkswagen appears to have been pushed directly back toward the windshield of the automobile.

Witness Johnson was examined in great detail and at some length, both in direct examination and in cross-examination, as to the location of the Volkswagen when she observed it, and it is necessary and helpful to set out verbatim certain portions of her testimony. In direct examination by defendant's attorney, as it appears in the record, the following questions were asked and answers given: "Q. What lane were you in when you passed in front of the blue Volkswage (sic)? A. Well, I was to the right of her. Q. What lane were you in? A. I was in the south lane. Q. And what lane was she in at that time? A. In the left lane. Q. Was she moving or stopped? A. No, she was stopped." Later, on cross-examination by counsel for the plaintiff, the following appears: "BY MR. SCHREMPP: Q. Mrs. Johnson, you say that when you went past going east there was enough room in the curb lane for you to get by south of the Volkswagen, is that right? A. Yes. Q. The Volkswagen then was in the lane — A. To the left of me. Q. To the left of you? A. Yes. Q. In other words that

would be the lane between the center line — well, it would be the first lane south of the center line, wouldn't it? You were in the curb lane? A. Yes. Q. And the Volkswagen was in the lane immediately north of you? A. It was north of me. I had enough room to get past. Q. So there was one whole clear lane but the other lane was occupied by the Volkswagen, was it not? A. Yes. Q. At the time you drove past it after the accident in what direction was the Volkswagen facing in this lane? A. Well, it looked to me like it was just practically straight west. Q. Would you come here and put this up for us then, if you would, ma'am? Well, maybe I can help. If you place the car facing straight west in approximately that position, would that be about correct? A. I expect. It looked to me like it was just about straight. Q. In other words it was facing due west, wasn't it? A. Yes. Q. This was after the whole collision was over? A. Yes."

On further cross-examination of the witness, Ida Johnson, she gave these answers to questions propounded to her: "Q. All right, I will ask you this: You say that after you saw the motorcycle go up toward the trees that you drove east? A. Right. Q. On Center Street? A. Right. Q. And that you drove east on the curb lane, which would be the lane closest to the south - right? A. Yes. Q. And in the next lane over; in other words, the lane next to you you saw the Volkswagen for the first time? A. Yes. Q. And it was in the lane right next to your lane, was it not? A. Yes. Q. And it was facing you say due west? A. Right. Q. No problem then about that where it was. A. I was going east and she was going west. Q. And you are sure of that? A. Sure, I am sure. I know which direction I was going. Q. Well then that would be correct as to where you saw the car, would it not? A. I was in the south lane and she was in the north lane. Q. All of course south of the center line? A. Yes." She also testified that following the impact she saw the defendant drive her Volkswagen

to the south curb and thought to herself "You shouldn't have moved that."

In addition, debris, which the police accident investigator testified was similar to that on the undercarriage of vehicles, was found in the left or northern east bound lane.

From the testimony quoted above and the evidence noted, it is clear there was indeed evidence in the record from which the jury could find that at the time of the accident the defendant was driving on the wrong side of the street. Had the jurors been instructed that driving on the wrong side of the street could be considered by them as evidence of negligence, and had they chosen to believe witness Johnson's testimony, they might well have found, at least circumstantially, that at or immediately before the moment of impact the defendant was driving her Volkswagen in a westerly direction on the north half of the east bound lane of Center Street, all south of the centerline of Center Street.

The law applicable to this situation is that when a motion has been made to amend a pleading to include a material allegation upon which some evidence has been received, such amendment should be allowed. Of course, whether or not the evidence is sufficient to support a favorable finding thereon remains a question of fact. Curren v. Certain Parcel of Land, 149 Neb. 477, 31 N. W. 2d 405 (1948); Seeman v. Pagels, 184 Neb. 757, 172 N. W. 2d 100 (1969); § 25-852, R. R. S. 1943. A litigant is entitled to have the jury instructed as to his theory of the case as shown by the pleadings and evidence, and a failure to do so is prejudicial. Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571 (1957); Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758 (1957); Stillwell v. Schmoker, 175 Neb. 595, 122 N. W. 2d 538 (1963).

Since both the negligence of the defendant, and the contributory negligence of the plaintiff were issues in this case, it is possible that had the jury been instructed on the issue of whether the defendant, Mrs. Andersen,

was driving on the wrong side of the road at the time of the accident, there being evidence in the record to sustain that contention on the part of the plaintiff, its conclusions and verdict may have been different, either as to defendant's negligence, or as to the degree of contributory negligence of the plaintiff.

There being evidence in the record on the issue, the plaintiff was entitled to have his theory of defendant's liability submitted to the jury under proper instructions, and I conclude that the failure of the court to do so was, in this case, prejudicial.

Finally, I am of the opinion that plaintiff's objection to the testimony of witness Madsen as to the speed limit at the scene of the accident should have been sustained. While it is undoubtedly true that a witness may testify as to the posted speed limit at a given location if an appropriate foundation is laid, the record in this case is absolutely silent as to whether the witness had even seen a speed limit sign and his testimony as to his opinion of the applicable speed limit at that place was, to say the least, indefinite. During the course of the trial, the court, over objection of plaintiff's counsel, permitted the attorney for defendant to read the following city ordinance to the jury: "It shall be unlawful for any person to operate any motor vehicle on, over or upon any street or streets in the City of Omaha at a rate of speed greater than is reasonable and prudent, having due regard for the traffic, surface, width and condition of the road and the hazard at intersections, nor at a rate of speed such as to endanger life or limb of any person, nor in any case at a greater rate of speed than twenty-five miles per hour, except on street or streets where a greater rate of speed is permitted, as designated by signs installed along such street or streets." It is the general rule that municipal ordinances must ordinarily be pleaded and proved. Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677 (1954). The District Court may not, in original actions, take judicial notice of mu-

nicipal ordinances. Section 14-138, R. R. S. 1943, provides that city ordinances "may be proved by a certificate of the clerk under the seal of the city, and when printed or published in a book or pamphlet form, and purporting to be published or printed by authority of the city counsel, shall be read and received in all courts and places without further proof." There is no showing in the record that counsel for the defendant read the ordinance in question to the jury out of such a book or pamphlet. Before permitting the counsel to read the ordinance in question to the jury, the judge commented that he would possibly give the ordinance to the jury as part of the instructions. In instruction No. 14, the court told the jury: "If you find from the evidence that any of the parties violated any of the laws of the State of Nebraska *or City of Omaha Ordinances* which are set out in these Instructions, the violation thereof is not in and of itself negligence as a matter of law; but the violation thereof is evidence of negligence which you should consider with all the other evidence in the case to determine whether or not the parties or either of them were guilty of negligence." (Emphasis supplied.) However, the court did not instruct the jury as to the Omaha ordinance relative to speed, nor did he inform it of what the specific speed limit was at the location in question. This may have well resulted in confusing the jury, to the prejudice of the plaintiff. I feel that the plaintiff should be afforded a new trial, and an opportunity to present his theory of the case to the jury under proper instructions.