DIAMOND FLORY, ADMINISTRATRIX OF THE ESTATE OF
HAROLD W. FLORY, DECEASED, APPELLANT, V. WALTER
HOLTZ, APPELLEE.
126 N. W. 2d 686

Filed March 6, 1964.   No. 35563.

Dryden & Jensen, Tye, Worlock & Knapp, Andrew J. McMullen, and Paine & Paine, for appellant.

Luebs, Elson, Tracy & Huebner, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action to recover damages for the death of Harold W. Flory, as the result of the alleged negligence of Walter Holtz. The action was brought by Diamond

Flory, widow of the deceased, as administratrix of the estate of Harold W. Flory. The parties will hereinafter be referred to as follows: Diamond Flory, administratrix, as plaintiff; Walter Holtz as defendant; and Harold W. Flory as deceased.

Defendant's motion at the close of plaintiff's evidence to dismiss plaintiff's petition was sustained, and a trial on the defendant's cross-petition was continued to a subsequent jury. Upon the overruling of her motion for new trial, plaintiff perfected her appeal to this court.

The collision resulting in the death of deceased occurred at about 3:30 p. m., on October 2, 1961, in Buffalo County, at an unprotected county road intersection 1 mile west and 1 mile north of Shelton, Nebraska. Both roads were level, dry, graveled, and approximately 20 feet wide. Deceased was driving a 1959 Chevrolet pickup truck, hereinafter referred to as pickup, weighing 4,164 pounds, on the east-west road, traveling toward the west. Defendant was operating a 1960 Chevrolet truck, hereinafter referred to as truck, weighing 8,950 pounds, on the north-south road, traveling toward the south. The view of the intersection was obstructed for both vehicles by a cornfield at the northeast corner of the intersection. The evidence is that the corn at that time was from 10 to 12 feet high.

There were no eyewitnesses to the collision. Both drivers were alone, and the defendant has no recollection of it. One of plaintiff's witnesses, who was disking 1,000 feet away from the north-south road, saw the defendant's truck for aproximately 300 feet through an opening in the corn rows, and when it went out of sight it was then about 300 feet from the intersection. He testified: "* * * it wasn't going real slow and it wasn't going excessively fast; it was just driving normal." This witness did not see the deceased as he could not see the east-west road because of the corn, but he testified he was aware that another car was in the vicinity because as he was disking east he had observed a

little dust about 1,200 feet from the corner on the east-west road. At that time he estimates he was about 100 feet from his turn, traveling about 4½ miles per hour. He made his turn to the west and had returned about 100 feet when he saw the defendant's truck.

The investigating officer found a skid mark of 45 feet extending straight east from the center of the intersection, but found none running north and south. He found sliding or scuff marks from the center of the intersection where the skid mark stopped and going off to the southwest corner of the intersection. While he made certain measurements, he did not make any measurements of the slide marks or of the distances the vehicles traveled after the collision. He did testify, however, that the Holtz truck rolled over during the procedure. He estimated that the Flory pickup stopped approximately 25 to 30 feet, and the Holtz truck 80 to 100 feet southwest of the center of the intersection. The truck was south of the pickup, facing mostly east and a little north. The pickup was facing north and west. The front of the pickup apparently struck the left side of the truck, just ahead of the back dual wheels. The truck's stock rack was broken and there was a dent in the steel band around the truck as well as some green paint from the pickup on the truck and on the frame at this point. Green paint was also found on the back part of the front fender of the Holtz truck, and some black tire marks, apparently from the truck, were found on the right front fender of the pickup.

The investigating officer took several pictures at the scene. These were received in evidence without objection. These photos were of the intersection and the approaches to it. They showed the position of the vehicles after the impact as well as the extent of the damage to each vehicle. They also indicated a large scuff mark in the southwest corner directly behind the pickup, the nature of the gravel, and the skid and slide marks. Except for the scuff mark, which is unexplained

and is directly behind the pickup, the testimony is that there were no skid or slide marks between the southwest corner of the intersection where the slide marks end and the Holtz truck, which, under the investigating officer's estimate would be from 50 to 70 feet south. The photos show some marks which must be assumed to have no connection with the collision, as no explanation of them appears in the plaintiff's evidence.

Plaintiff alleges four assignments of error: First, the refusal to admit certain evidence by her expert witness; second, dismissal of her petition; third, permitting defendant's cross-petition to be continued as a separate cause of action; and fourth, the overruling of her motion for a new trial. We will discuss these assignments in the order listed.

Plaintiff called a University of Nebraska mechanical engineering professor who was qualified as an expert witness as to motor vehicle speeds. The witness testified that he had experience with the determination of speed and the calculation of physical happenings in automobile accidents. He employed two laws of physics, the law of conservation of energy and the law of conservation of momentum. He explained them as follows: "The law of conservation of energy states that energy cannot be created or destroyed, with the exception of atomic energy; and the law of conservation of momentum states that the momentum of a body before collision—or perhaps I should say the momentum of two bodies before collision is the same before and after collision; there is no change due to the collision." He also testified that he had conducted experiements on gravel to determine the coefficient of friction between rubber and a gravel surface. There is no evidence in the record as to what this figure might be. No experiments were conducted by him at the place where the collision occurred.

The witness was permitted to give his estimate of a minimum speed of 25 miles per hour for the pickup truck driven by the deceased when at a point 45 feet

east of the center of the intersection. This obviously was based upon the fact that the pickup had laid down a skid mark of 45 feet from that point, and its speed could not have been less than 25 miles per hour. We have held that a qualified expert, upon laying a proper foundation, may give his opinion as to the speed of an automobile, based on the length of skid marks made by it when brakes were applied. McKinney v. Wintersteen, 122 Neb. 679, 241 N. W. 112. This rule has been followed in several subsequent cases. However, an analysis of the cases in each instance indicates a situation where the speed testified to would be at least the minimum. Probably an accurate statement of the rule would be: "A qualified expert upon laying a proper foundation may give his opinion as to the minimum speed which a vehicle must have been traveling to lay down the skid mark shown in the evidence."

Plaintiff's expert was not permitted to give his opinion as to the speed of the Holtz truck before the impact, or to give his opinion as to the speed of the two vehicles at the time of the impact. These rulings constitute the basis of plaintiff's first assignment of error.

The question does not involve the qualification of the expert as such. If sufficient facts are present to permit an answer by an expert, the witness presented was qualified. Our rule is: "Whether a witness' qualification to state his opinion is sufficiently established rests largely in the discretion of the trial court, and its ruling thereon will not ordinarily be disturbed on appeal unless there is a clear showing of abuse." Elliott v. Swift & Co., 151 Neb. 787, 39 N. W. 2d 617.

The expert was permitted to examine the photos in evidence showing the intersection, type of gravel surface, skid and slide marks, position of the vehicles after the impact, the marks upon them, and the extent of the damage sustained by them. He was given the weight of the vehicles, the estimated distance they stopped from the intersection, information on the weather, the type of

surface, the condition of the vehicles, the length of the skid mark from the east, and the information that the brakes and tires on the pickup were in good condition. He was then asked if, assuming all these facts to be true, he could from them form an opinion as to the speed of the pickup when it reached the center of the intersection. His answer was "Yes." When asked for the opinion, defendant's objection was sustained.

The witness was then asked if he had an opinion as to the speed of the truck prior to the collision. He answered in the affirmative. An objection was sustained when he was asked for his opinion. An offer was then made to prove that if permitted to testify, the witness would state the speed of the truck both before and at the time of the colliison.

We have said on several occasions: "Various factors, such as skid marks, distance traveled after impact, and force of impact, constitute pertinent evidence in arriving at an estimate of the rate of speed of an automobile." Tate v. Borgman, 167 Neb. 299, 92 N. W. 2d 697. These matters are pertinent for the consideration of the jury in determining the speed. However, for a hypothetical question to be sufficient to permit a qualified expert to give an estimate of the rate of speed of a vehicle at any particular point, all necessary factors needed to suggest a reasonably accurate opinion must be included in the question and supported by the evidence. There must not be any room for speculation in the factors on which the opinion is to be based.

It is evident from this record that there is considerable speculation involved in the factors on which the opinions sought to be elicited must be based. The stopping distances of the vehicles after the accident, given in the hypothetical question, are merely estimates. The highway patrolman estimated the distance the pickup traveled after the accident, assuming the point of impact to be the center of the intersection, at from 25 to 30 feet, and the truck from 80 to 100 feet. Using an estimate,

and certainly one with a range as great as these, creates a very serious doubt as to the accuracy of any opinion. The question also assumes that nothing happened in the collision, other than the impact itself, which could have affected the distance the vehicles traveled after the impact. There are several factors which could make a difference. We have a situation where we are merely basing one guess upon another.

There is no testimony in this record as to the coefficient to be used by the witness, or any data as to how it was obtained. There is no evidence of the tire pressure of any of the tires on the vehicles; of the depth or intensity of the skid mark; of the temperature of the surface; nor of the effect, if any, of a recently dragged surface with loose gravel in the center, both of which conditions are observable in the exhibits in evidence.

It would seem obvious that the coefficient to be used would depend considerably upon the type and condition of the vehicles involved and the exact condition of the surface where the collision occurred. The witness testified that he had performed experiments or had seen experiments performed on a like surface and knew the coefficient to be used. There is no testimony that he had seen experiments involving a pickup and a truck. Nor is there any evidence from which it could be ascertained that the experiments he had performed or witnessed had been performed on an exactly similar surface. The variance between a like surface and an exactly similar surface could be very great.

In this case, the truck, which rolled over, was more than twice as heavy as the pickup which struck its left side. The truck, which was traveling south, after the impact and after rolling over was upright and facing east and north. Where the truck rolled over does not appear in the evidence. There is green paint from the pickup on the frame of the truck, which would indicate that the pickup submarined the truck at the point of impact. Would this have any effect on the distance

traveled? Did any experiments performed to obtain a . coefficient involve a similar situation? There are other questions of similar import which cannot be answered from this record.

We are in the realm of pure speculation. The testimony is dependent upon too many assumptions. We should not confuse inferences drawn from facts and inferences which are based upon mere assumptions. There is a vast difference between permitting an expert to give an opinion when all of the factors necessary to base an estimate of minimum speed are present and in permitting an estimate of actual speed based on assumptions that have no adequate foundation in the evidence. The apparent competency of the expert would merely aggravate the error.

To permit the introduction herein of the opinions sought on the inadequate foundation laid would be to turn the trial of a collision case into a guessing contest for an expert. The trial court did not abuse its discretion in excluding the opinions sought.

Plaintiff's second assignment of error relates to the dismissal of her petition at the close of her evidence. A motion for a directed verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. See Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523. We review the record with this rule in mind.

The burden of proving negligence is on the party alleging it. Plaintiff, therefore, had the burden to prove by a preponderance of the evidence some actionable negligence on the part of the defendant. Negligence is never presumed and it cannot be inferred from the mere fact that an accident happened. Howell v. Robinson Iron & Metal Co., 173 Neb. 445, 113 N. W. 2d 584.

There were no eyewitnesses to the collision herein. The deceased was killed, and the defendant has no recollection of it. Actionable negligence on the part of the defendant cannot be inferred from a presumption of due care on the part of the deceased. The presumption of due care raised by the instinct of self preservation benefits the defendant as well as the deceased. It must be overcome by direct evidence. One presumption cannot be built upon another. See Wolcott v. Drake, 162 Neb. 56, 75 N. W. 2d 107.

We have said negligence is a question of fact and may be proved by circumstantial evidence and physical facts. However, the law requires that the facts and circumstances proved, together with the inferences that may properly be drawn therefrom, indicate with reasonable certainly the negligent act charged. Wolstenholm v. Kaliff, *ante* p. 358, 126 N. W. 2d 178. Are the facts and circumstances herein, and the inferences to be drawn therefrom, sufficient to indicate with reasonable certainty actionable negligence on the part of the defendant who had the directional right-of-way?

Plaintiff's entire case must be built upon the fact that the pickup laid down a skid mark of 45 feet to the center of the intersection. There were no skid marks from the defendant's truck to this same point. From this and the necessary reaction time incident thereto, plaintiff would draw the inference that the pickup was closer to the intersection than the truck when the deceased first observed the truck. She seeks thus to overcome the effect of defendant's directional right-of-way.

Section 39-728, R. S. Supp., 1961, reads in part as follows: "* * * motor vehicles traveling upon public highways shall give the right-of-way to vehicles approaching along intersecting highways from the right, and shall have the right-of-way over those approaching from the left when said vehicles shall reach the intersection at approximately the same time. (2) In all other cases

the vehicle reaching the intersection first shall have the right-of-way."

This statute is intended to avoid collision between vehicles at intersections and the right-of-way is not to be determined by the single test of which vehicle actually entered the intersection first, if the vehicles approached or entered the intersection at approximately the same time. The driver of a vehicle who does not have the right-of-way is not justified in taking close chances and if there is reasonable danger of collision if both vehicles proceed then it is his duty to yield the right-of-way. See Long v. Whalen, 160 Neb. 813, 71 N. W. 2d 496. In that case we said: "The drivers of vehicles approach an intersection at approximately the same time whenever the two vehicles are in such relative position that upon appraisal of all factors it should appear to a man of ordinary prudence approaching from the left that there is danger of collision if he fails to yield the right-of-way."

To permit the jury under the factual situation in the instant case to find that the deceased had the right-of-way would permit it to resort to speculation or guess work, for there is no sufficient evidence on which the jury could properly base such conclusion.

Plaintiff would also draw the inference that the defendant did not see the deceased approach the intersection because of the absence of skid marks. It is a known fact that a vehicle may be slowed down by some braking pressure before the vehicle leaves a mark on the surface. There is also the matter of reaction time. The only testimony adduced directly as to defendant's speed is that 300 feet north of the intersection defendant "was just driving normal." Plaintiff does not contend that defendant was exceeding the speed limit but that his speed, whatever it might have been, was unreasonable and imprudent under the existing circumstances. There is no reasonable basis apparent in the evidence for this assumption.

Without some evidence as to where defendant's truck

might have been when it was first observed by the deceased, or without some fact from which an inference could be drawn as to its approximate position, we cannot accept plaintiff's assumption without entering into the realm of speculation. It is entirely possible that the defendant, who was driving "just normal," had eased his speed for the intersection, and that before he became aware that the deceased was not going to respect his right-of-way he had insufficient time to act. The evidence is that the deceased was driving down the center of the road rather than being entirely on the north half of it. The point of impact was apparently near the center of the intersection. The pickup struck the truck just in front of its back duals. This would indicate that the defendant was almost past the middle of the intersection when hit.

We come to the conclusion that the facts and circumstances herein, and the inferences to be drawn therefrom, are not sufficient to indicate with reasonable certainty actionable negligence on the part of the defendant. The action of the trial court in sustaining defendant's motion was correct.

Plaintiff's third assignment of error involves the continuance by the trial court of the defendant's cross-petition as a separate cause of action for trial to a subsequent jury. This was strictly in accord with section 25-834, R. S. Supp., 1961, which provides in part: "(2) Notwithstanding the provisions of subsection (1) of this section, a motion for directed verdict or dismissal may be made by a defendant without withdrawing a counterclaim or cross-petition. In the event such motion for directed verdict or dismissal is overruled the trial may proceed to final submission of the cause including the counterclaim or cross-petition. In the event such motion for directed verdict or dismissal is sustained, the counterclaim or cross-petition shall be continued as a separate cause and trial thereon had at a subsequent jury the same

as if it had been filed as a separate action." The statute is clear and requires no discussion herein.

Plaintiff's fourth assignment of error is that the court erred in overruling plaintiff's motion for a new trial. What has been said heretofore sufficiently disposes of this assignment.

For the reasons given, we come to the conclusion that the trial court's ruling in each instance was correct. The action of the trial court is in all respects affirmed.

AFFIRMED.