GEORGE W. CAVES, APPELLEE, V. MAX O. BARNES ET AL., APPELLANTS.

132 N. W. 2d 310

Filed December 31, 1964.   No. 35746.

Robert C. Oberbillig, Herbert E. Story, and Robert E. Sullivan, for appellants.

Haney, Walsh & Wall, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and ROBERT L. SMITH and ROBERT L. FLORY, District Judges.

FLORY, ROBERT L., District Judge.

This is an action by George W. Caves, plaintiff and appellee, against Max O. Barnes and Barnes Oil Company, a corporation, defendants and appellants, for personal injuries, property damage, and incidental expenses resulting from a motor vehicle collision. Defendant Max O. Barnes cross-petitioned for personal injuries and defendant Barnes Oil Company, a corporation, cross-petitioned for property damages and subrogation rights under the Nebraska Workmen's Compensation Law. The jury returned a verdict for the plaintiff in the amount of $8,866. After motions for judgment notwithstanding the verdict or for a new trial by both defendants were overruled they both perfected this appeal.

The accident happened at approximately 11:15 a.m., on September 17, 1962, near Linoma Beach approximately 2½ miles east of Ashland, Saunders County, Nebraska, on U. S. Highway No. 6. The highway in the area of the collision was straight and level and although it does not run truly east and west, for the sake of brevity and clarity, we will use those directions. The hard-surfaced

portion of the highway was 24 feet wide, marked with a centerline, and had shoulders approximately 8 feet wide. On the north side of the highway was an access road to a cottage area. Across the highway to the south were the main beach facilities and tower area. There were two entrances to this area approximately 108 feet apart, one to the east and one to the west of the road to the cottage area. Approximately 600 feet east of the east edge of the easterly entrance to the tower area was a gravel road running southerly to the clubhouse area.

Plaintiff, operating his 1959 Diamond T tractor and pulling a 1961 Trailmobile semi-trailer loaded with bagged fertilizer, was traveling west enroute from Omaha to Lincoln. When plaintiff was some 700 or 800 feet east of the road to the clubhouse area Max O. Barnes, hereinafter referred to as defendant, operating a 1959 Ford gasoline truck owned by his employer, Barnes Oil Company, a corporation, entered U. S. Highway No. 6 enroute from the clubhouse to the cottage area. There is no dispute as to the above facts.

Plaintiff's testimony is that when defendant's truck entered U. S. Highway No. 6 he had been going 60 miles per hour; that he coasted through the intersection losing speed; that after defendant's truck had entered U. S. Highway No. 6 he saw its left-hand turn indicator operating and defendant's truck moved into the left-hand lane; and that when defendant's vehicle was approximately 50 feet in front of him it turned suddenly and without warning to the right across the highway in front of him as he was preparing to pass it on the right. Defendant's testimony is that as he was entering U. S. Highway No. 6 with his left-turn indicator on he noticed plaintiff's rig some distance to the east; that he proceeded to the west in the right-hand lane; that upon his straightening out his turn indicator went off automatically; that he never crossed the centerline; and that he signaled a right turn with the turn indicator before turning at the

entrance to the cottage area. This evidence is in direct conflict and is a question of fact for the jury.

There is also conflicting evidence as to the location of the impact. Without dispute it occurred opposite the entrance to the cottage area and was between the left front of plaintiff's tractor and the right front of defendant's truck. The plaintiff's evidence is that the impact occurred when defendant's right front wheel was still on the pavement and the plaintiff's left wheels were on the pavement with the right wheels about 3 feet on the shoulder. Defendant's evidence is that the front of his truck was 12 feet north of the north edge of the pavement. The investigating officer testified that the normal debris following such a collision was all on the pavement and identified a gouge mark, visible in the photographs in evidence, approximately 2 feet north of the north edge of the pavement traceable to a broken part of the front assembly of defendant's truck. He also testified as to tire marks leaving the north edge of the pavement in a gradual course and traceable to the right wheels of plaintiff's tractor. The vehicles had not been moved when he made his investigation and he found the defendant's truck headed west with the left wheels on the pavement and the right wheels on the shoulder, and the plaintiff's rig in the ditch on the north side of the highway beyond defendant's truck. His testimony and the photographs in evidence tend to corroborate plaintiff's version as to location of the impact.

Professor W. F. Weiland, an engineer who was qualified as an expert, testified in answer to hypothetical questions based on a plat drawn to scale of the area and photographs of the vehicles and the area that, in his opinion, the angle of impact between the vehicles was close to 90 degrees or a little less; that the vehicles could not have been at a narrow angle of impact; that considering the gouge mark, the front of defendant's truck was barely off the north edge of the pavement at the moment of impact; that if the defendant's truck were in

that position he would expect the debris to be on the pavement; and that if the front end of defendant's truck had been 12 feet north of the pavement he would expect the gouge mark to be that far north also.

Because of the direct conflicts in the evidence it was not error for the trial court to submit the case to the jury as contended by the defendants. The rule that where, from the evidence before the jury, different minds may draw different conclusions, or where there is a conflict in the evidence, the matter at issue must be submitted to the jury is elemental and needs no citation of authority.

Defendants contend that Professor Weiland should not have been allowed to testify. This contention is based on an interrogatory, directed to the plaintiff, filed January 14, 1963, as follows: "State the names and addresses of all persons you or your representatives, whose knowledge is imputed to you, have interviewed relative to the facts of this accident out of which this suit has arisen." This was one of the 24 specific interrogatories and the following provision was included after the last specific interrogatory. "Each of the foregoing Interrogatories shall be deemed continuing and if you discover additional information as to any of the matters inquired of in these Interrogatories between the date when your answers are made and the date of trial, supplemental answers should be made informing the defendants or their attorneys as to the newly discovered information prior to trial." The interrogatories were answered and filed on March 11, 1963, and did not include Professor Weiland's name. Professor Weiland was first contacted by plaintiff's attorney on November 11, 1963, and the trial commenced the next day. In refusing to exclude the testimony on the basis of the continuing provision in the interrogatories the trial court stated in substance that while it probably would have been better to have advised the defendants of the expert witness he would overrule the objection. He also indicated some question

in his mind as to whether or not the interrogatory literally covered the situation. Trial courts have broad discretion in the general conduct of a trial and we do not believe it was abused in this instance.

Defendants also timely objected to Professor Weiland's giving the answers to the hypothetical questions, previously referred to, for lack of foundation. "Whether a witness' qualification to state his opinion is sufficiently established rests largely in the discretion of the trial court, and its ruling thereon will not ordinarily be disturbed on appeal unless there is a clear showing of abuse." Flory v. Holtz, 176 Neb. 531, 126 N. W. 2d 686. Testimony of witnesses must be confined to concrete facts perceived by use of their senses as distinguished from opinions and conclusions deducible from evidentiary facts. While an expert will be permitted to express his opinion, or even his belief, he cannot give his opinion upon the precise or ultimate fact at issue before the jury, which must be determined by it. Stillwell v. Schmoker, 175 Neb. 595, 122 N. W. 2d 538; Danner v. Walters, 154 Neb. 506, 48 N. W. 2d 635. The witness did not testify as to the point of impact. His answers were limited to the character of contact of the vehicles and to certain results following the contact. See Barry v. Dvorak, 176 Neb. 375, 126 N. W. 2d 226. The trial court did not err in admitting the answers to the hypothetical questions. As to damages, the jury was instructed that if it found for the plaintiff it should consider the fair and reasonable expense of repairs and the fair and reasonable value of loss of use while repairs were being made. There was competent evidence as to both repairs and rental value. " 'When, at reasonable cost, a damaged automobile can be repaired and restored to substantially its original condition, such cost is a proper measure of damages in an action for negligence.' " Wylie v. Czapla, 168 Neb. 646, 97 N. W. 2d 255. See, also, Thrapp v. Meyers, 114 Neb. 689, 209 N. W. 238, 47 A. L. R. 585. "The reasonable value of the use of machinery for commercial purposes

is the reasonable net rental value upon the market at the place in question of the machine involved or machinery of like capacity and performance, the lessee bearing all such expenses as he would have to bear in the operation of his own machine." Kunkel v. Cohagen, 151 Neb. 774, 39 N. W. 2d 609. The trial court's instructions to the jury with respect to plaintiff's measure of damages were proper, despite defendants' contentions to the contrary.

Finally, defendants contend that the trial court erred in instructing the jury on the sudden emergency doctrine. "The doctrine of sudden emergency may not be successfully invoked by a litigant unless there is evidence that such an emergency existed, that the party seeking the benefit of the doctrine did not cause the emergency, and that he used due care to avoid it." Stanley v. Ebmeier, 166 Neb. 716, 90 N. W. 2d 290. See, also, Brazier v. English, 177 Neb. 889, 131 N. W. 2d 601. From the evidence the jury could have found that the defendant was signaling a left turn, that he crossed into the left lane, and that as plaintiff was about to pass on the right the defendant suddenly and without warning turned to the right in front of him. This would clearly raise the issue of sudden emergency.

For the reasons given, we conclude that the judgment should be and hereby is affirmed.

AFFIRMED.