JANET J. KOHLER, APPELLEE AND CROSS-APPELLANT, V. FORD MOTOR COMPANY, A CORPORATION, APPELLANT AND CROSS-APPELLEE.

191 N. W. 2d 601

Filed November 12, 1971. No. 37796.

Cassem, Tierney, Adams & Henatsch, Lawrence J. Tierney, Theodore J. Stouffer, and Crites and Shaffer, for appellant.

Bump & Bump, Laurice M. Margheim, and Herbert Resner of Belli, Ashe, Ellison, Choulos & Lieff, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an action by Janet J. Kohler against the Ford Motor Company to recover damages for personal injuries. The plaintiff was very seriously and permanently injured on August 7, 1960, when a 1960 Ford Falcon automobile in which she was a passenger left the highway and overturned. The automobile had been manufactured by the defendant and purchased new by Fred and Mabel Poppe on May 16, 1960, from Eustis Mercantile Company. Warranties which accompanied the sale limited the defendant's liability to replacement of de-

fective parts. At the time of the accident, the automobile was being driven by Lois F. Poppe, a daughter of the owners. Lois was killed in the accident.

The plaintiff's theory of the case is that the sector gear in the steering apparatus of the automobile was defective; and that sometime prior to the accident a tooth of the sector gear broke into two fragments which later caused the steering gear to "lock up" and as a result the automobile left the highway and overturned. Shortly after the accident, agents of the defendant dismantled the steering apparatus of the Falcon. When the housing containing the sector gear was opened it was discovered that one tooth of the sector gear was broken. When the grease was "dumped" out of the housing the two fragments of the broken tooth came out with the grease.

The trial court submitted the case to the jury upon the theory of strict liability in tort which placed upon the plaintiff the burden of proving, insofar as is pertinent on this appeal, only (a) the steering sector gear was defective when it left the manufacturer's hands and (b) that this defect was the proximate cause of the accident and the plaintiff's injuries. The jury awarded plaintiff damages of $325,000.

The defendant appeals and the following issues are before this court for decision: (1) Did the trial court err in overruling a special appearance by the defendant? (2) Was the cause barred by the statute of limitations because an amended petition, filed after the statute had run, presented for the first time the "strict liability" theory? (3) Should the doctrine of strict liability in tort be adopted and held applicable under the facts of this case? (4) If it is to be adopted, was the evidence sufficient to submit to the jury the issues designated (a) and (b) in the preceding paragraph hereof? (5) Did the trial court err in permitting the plaintiff to introduce the testimony of a certain expert witness on

rebuttal? We will treat each issue in the above order. We find for the plaintiff on all issues.

In the original petition filed July 9, 1962, the plaintiff, Mabel Poppe as administratrix of the estate of Lois F. Poppe, and Fred Poppe and Mable Poppe were all joined as plaintiffs and sought damages for their respective claims. The defendant filed a special demurrer which was sustained on the ground of misjoinder of causes of action and of parties plaintiff. The trial court, on motion of the plaintiffs, permitted each to file separate petitions and directed that they be separately docketed. The defendant was directed to answer within 30 days of the filing. No new process was served after the causes were separately docketed. Thereafter the defendant filed a special appearance which was overruled. Later demurrers and answers were filed, each preserving the special appearance. Later, on December 3, 1969, an amended petition was filed. Thereafter on December 16, 1969, the defendant, without preserving its special appearance, filed a motion to dismiss the action because of failure of the plaintiff to comply with a certain pretrial order. This motion to dismiss constituted a general appearance by the defendant and renders moot the issue raised by the special appearance. Abel v. Southwest Cas. Ins. Co., 182 Neb. 605, 156 N. W. 2d 166. This is not to be taken as deciding that the trial court did not have authority to permit separate docketing of the petitions of the plaintiffs while still retaining jurisdiction under the original process. We simply do not need, under the circumstances here, to reach that question. We note, however, that under code procedure the sustaining of a demurrer, even on misjoinder of parties plaintiff, does not bring the action to an end. § 25-854, R. R. S. 1943; 27 C. J. S., Dismissal & Nonsuit, § 63d, p. 418; 67 C. J. S., Parties, § 132a, p. 1135. Section 25-809, R. R. S. 1943, does not appear to be intended as a limitation on the powers of the court.

Plaintiff, in her amended petition filed December 3,

1969, claimed a right of recovery under theories of (1) res ipsa loquitur; (2) breach of express warranty; (3) breach of implied warranty; and (4) strict liability. Each of these is pleaded as a separate "cause of action." Earlier petitions had also been so composed presenting various theories of recovery, each being denominated as a separate cause of action. The defendant contends that the claim of a cause of action based upon strict liability is a new cause of action pleaded by amendment based on a different standard of care and is the equivalent of a new suit so the statute of limitations continues to run until the filing of the amendment, which in this case was more than 5 years after the plaintiff became 21 years of age. The defendant pleaded the statute of limitations in its "answer" to the plaintiff's amended petition. The defendant relies upon Miller v. Werner (Mo.), 431 S. W. 2d 116, wherein the Supreme Court of Missouri held in a suit for malpractice that where the original complaint was founded on negligence of the surgeon in the performance of the surgery, an amendment which sought recovery on the theory of the defendant's failure to obtain the plaintiff's informed consent did not relate back to the filing of the original petition and the statute of limitations therefore barred the action. We do not think that case is applicable here.

The mechanical form in which the plaintiff divided her petition is immaterial on the issue of whether it states one or more than one cause of action. Sedlak v. Duda, 144 Neb. 567, 13 N. W. 2d 892, 154 A. L. R. 490. In this case if the plaintiff has not stated a new cause of action in the amendment it does relate back and the cause is not barred by the statute of limitations. We hold the amendment did not state a new cause of action. The plaintiff had but one. The theory of recovery is not itself a cause of action. A right not to be injured may rest upon more than one ground, but without injury there is no cause of action at all. The general facts upon which the right to recover was based are the same.

Abbott v. Abbott, 185 Neb. 177, 174 N. W. 2d 335; Clark on Code Pleading (2d Ed.), pp. 134, 137, 715; City of Alliance v. Cover-Jones Motor Co., 154 Neb. 900, 50 N .W. 2d 349.

There was no direct eyewitness testimony as to what caused the Falcon automobile to leave the highway. The plaintiff testified that the automobile "started to vibrate" and that it "swerved to the left-hand side of the road." The plaintiff looked at Lois and saw that she had both hands on the wheel, was looking straight ahead, and had a shocked expression on her face. Neither Lois nor the plaintiff said anything to each other at that time.

The Poppe automobile had passed another automobile on the curve west of the scene of the accident. The other automobile was being operated by Geraldine K. Licht and was traveling about 45 miles per hour in an easterly direction. The Poppe automobile was going about 50 miles per hour as it passed the Licht automobile. There was no other traffic nearby.

As the Poppe automobile returned to its own lane, after passing the Licht automobile, Mrs. Licht noticed that "the rear end wobbled like an empty pickup." Mrs. Licht did not notice anything further of an unusual nature until her husband, Walter H. Licht, who was sitting beside her, said: " 'Watch out for the car ahead!' " and " 'Slow down.' " Mrs. Licht testified that she noticed the Poppe automobile wobbled toward the left of the highway, back to the right, and then into the left ditch. The speed of the Poppe automobile was then about 50 or 55 miles per hour.

Mr. Licht testified that after the Poppe automobile had passed them he noticed that "the back end had a tendency to ride a little to the left-hand side." Then, as they were proceeding down the highway, he noticed the Poppe automobile "wobbled slightly," "hit the (right-hand) side of the road a little bit," and then "veered

across the road to the left-hand side, and went over into the ditch."

The highway where the accident occurred was a paved two-lane highway 21 or 22 feet wide with shoulders. The evidence negatives highway defects, oil slicks, automobile hood coming up, collision with animals, etc., as possible causes of the accident. After the accident, one of the rear tires was found to be flat. However, it had not blown out, it had no damage, and when reinflated on the same rim, which after the accident had a large dent on the inner flange, was found to hold air satisfactorily.

There had been no mechanical difficulties of any kind with the Poppe automobile. It had never been repaired and had received only normal maintenance. On the day before the accident it had been driven approximately 250 miles on a trip to South Dakota over winding roads, S curves, and pigtail turns with no difficulty of any kind.

The defendant urges that the trial court erred in submitting the case to the jury upon the theory of strict liability in tort because the doctrine is not the law of this state and should not be adopted as the law of this state. After examination of the many authorities cited by the parties, including pertinent prior decisions of this court, we conclude that the trial court correctly determined the state of the law and was correct in its instruction to the jury which we will hereafter refer to.

The Nebraska case most closely related in principle is Asher v. Coca Cola Bottling Co., 172 Neb. 855, 112 N. W. 2d 252 (1961). In that case this court allowed recovery to a person injured by a foreign substance in a soft drink bottle. The court there said: "When a drink intended for human consumption is marketed in sealed containers, and such drink causes injury to a consumer, it is not necessary in a personal injury action to show that the container was within the physical control of a manufacturer in order to hold a manufacturer under the res ipsa loquitur doctrine. . . . The unexplained pres-

ence of a deleterious substance in a product manufactured and sold in a sealed container for human consumption is evidence of a breach of implied warranty that the product is wholesome and fit for human consumption. . . . A consumer can recover either on the theory of negligence or implied warranty from a manufacturer for injuries resulting from presence of deleterious substance in a product manufactured and sold for human consumption where it is shown that the deleterious substance was present when the product left the manufacturer's control." It is to be noted that here the court lessened the requirements of the res ipsa loquitur doctrine and eliminated the necessity of privity for recovery under the theory of implied warranty.

Earlier the Supreme Court of California, in Escola v. Coca Cola Bottling Co., 24 Cal. 2d 453, 150 P. 2d 436, allowed recovery under similar theories to a person injured by an exploding soft drink bottle. In a separate concurring opinion in that case one of the judges urged as the proper basis of recovery the theory of strict liability in tort. This has come to be the accepted basis of recovery against manufacturers of defective products for injuries to users. We can see no rational distinction between the soft drink bottle cases and the case at hand. What we do here is really no more than announce a clarifying change of label. The courts of numerous, if not most, states have now adopted this doctrine of strict liability in tort. It would be superfluous for this court at this late date to expound the rationale at length or to cite numerous authorities. We refer the reader only to the following: Henningsen v. Bloomfield Motors, Inc., 32 N. J. 358, 161 A. 2d 69, 75 A. L. R. 2d 1, the landmark case, where the facts are substantially similar to those here; Restatement, Torts 2d, § 402A; Prosser, The Fall of the Citadel, 50 Minn. Law Rev. 791, where the leading case and subsequent developments are reviewed; Greenman v. Yuba Power Products, Inc., 59 Cal. 2d 57, 27 Cal. Rptr. 697, 377 P. 2d 897, 13 A. L. R. 3d 1049,

where the fundamental principle is succinctly stated.

We hold that a manufacturer is strictly liable in tort when an article he placed in the market, knowing that it is to be used without inspection for defects, proves to have a defect which causes an injury to a human being rightfully using that product. The efforts of the manufacturer to limit its liability by rules applying to warranties are not effective here. See Greenman v. Yuba Power Products, Inc., *supra.*

The expert testimony in the case, insofar as it is relevant and material here, relates to the two issues of proof previously designated (a) and (b). There is no direct evidence that the steering gear "locked up" causing the accident. The gear turned freely after the accident.

Instruction No. 7 given by the court was in part as follows: "To recover against the defendant, the plaintiff must prove by a preponderance of the evidence: 1. The defendant placed the 1960 Ford Falcon automobile in question on the market for use, and the defendant knew, or in the exercise of reasonable care should have known, that the automobile would be used without inspection for defects in the steering sector shaft; 2. The steering sector shaft was in a defective condition at the time it was placed on the market and left the defendant's possession; 3. The plaintiff was unaware of the claimed defect; 4. The claimed defect was the proximate cause or a proximately contributing cause of any injury to the plaintiff occurring while the automobile was being used in the way and for the general purpose for which it was designed and intended; 5. The defect, if it existed, made the automobile unreasonably dangerous and unsafe for its intended use; 6. The plaintiff sustained damages as the direct and proximate result of the claimed defect; . . .."

Issues 2 and 4 in the above instruction we have heretofore summarized are issues (a) and (b) and to the proof of these two items is directed substantially all of the voluminous expert testimony in the case. We briefly

summarize the testimony as follows: The plaintiff called Dr. Stensaas, head of the Department of Mechanical Engineering of the South Dakota School of Mines. He had conducted experiments upon a 1960 Falcon sector shaft using a Tinius Olsen machine and determined the amount of static pressure required to break the gear tooth in question and then conducted experiments on the steering apparatus to determine whether components of the steering mechanism would give way before sufficient pressure could be applied to the gear itself to make it give way. He found certain parts did give way before the teeth could be damaged. Based upon his examination of the gear tooth fragments from the accident car and the results of his experiments he was allowed to give his opinion that there was a reasonable probability of a defect in the manufacture of the gear in question.

Buddy Taylor, a mechanic and race driver who had built and repaired steering systems on hundreds of cars, worked with Bobby Unser, also a mechanic and a race driver, in the conduct of tests with a Falcon automobile like the Poppe car. They removed the sector shaft from the automobile, broke a tooth off, then broke the tooth in two parts, and then using an adhesive material replaced the tooth in the gear. They then reassembled the steering gear in the car. With Unser driving they took the car onto the highway to see what would happen. They turned the steering gear until the broken tooth dropped into the gear box and then continued to drive. After driving about 50 miles, the steering gear locked, the car left the highway and was damaged. Taylor gave as his opinion that the broken tooth locked the steering mechanism and caused the car to leave the highway. With the aid of an experiment using a mock-up of the steering mechanism, he testified that "it will not lock up necessarily in the same position twice," and in an answer to a hypothetical question

stated "that the tooth locked up the steering" and the car could not then be controlled.

Unser testified to his experience in doing specialized mechanical work and to the experiment that he and Taylor conducted. The gear locked slightly twice before locking up in such a manner that it left the road. He took the steering apparatus apart at the place of the accident and the broken tooth was in the bottom of the gear box. Unser further, after foundation was laid as to his qualifications to determine the difference between a defect in material and a trauma defect, gave his opinion, stating "the sector shaft was probably made improperly at the factory." He gave significance to the fact that the tooth was broken into two parts. He also testified that magnafluxing showed a spiral crack in the sector shaft which had no causal effect as far as the accident was concerned, nor was it caused by it, but simply showed that the sector shaft was defective. He also stated reasons why the accident itself could not have caused the fracture of the tooth.

The defendant called William J. Pfander, one of its quality control engineers, who testified he could determine the causes of breaks in metals. He gave as his opinion that the tooth in question broke from an overload; that there was "nothing abnormal about the fracture"; that the break in the gear was caused in the accident; "That this was a mechanical fracture resulting from impact"; and that there was no "evidence, whatsoever, of any crack that would have in any way resulted from the forging process." He also stated that the damage to the lower control arm would indicate to him there was sufficient force to have caused the tooth to be fractured in an accident. The defendant also called Mr. Lee, a mechanical engineer, who testified generally to the same effect.

In determining the sufficiency of the evidence to sustain a verdict, it must be considered most favorably to the successful party and every controverted fact resolved in

his favor, and he must have the benefit of inferences reasonably deducible from it. Marquardt v. Nehawka Farmers Coop. Co., 186 Neb. 494, 184 N. W. 2d 617. A jury verdict based upon conflicting evidence cannot be set aside unless clearly wrong. Haney v. L. R. Foy Constr. Co., 186 Neb. 528, 184 N. W. 2d 628. Both sides regarded the two key issues previously mentioned as the proper subject of expert testimony. Defendant, however, questioned the qualifications of the plaintiff's experts.

The nature and cause of the gear tooth breaking was clearly a matter for expert testimony as was the question of whether or not the broken gear could catch in the steering mechanism and cause the accident. As noted by McCormick: "An observer is qualified to testify because he has firsthand knowledge which the jury does not have of the situation or transaction at issue. The expert has something different to contribute. This is a power to draw inferences from the facts which a jury would not be competent to draw. To warrant the use of expert testimony, then, two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth. The knowledge may in some fields be derived from reading alone, in some from practice alone, or as is more commonly the case, from both. While the court may rule that a certain subject of inquiry requires that a member of a given profession, as a doctor, an engineer or a chemist, to be called, usually a specialist in a particular branch within the profession will not be required. The practice, however, in respect to experts' qualifications has not for the most part crystallized in specific rules, but is recognized as a matter for the trial judge's discretion review-

able only for abuse." McCormick on Evidence, § 13, p. 28. We find no abuse of discretion here. The evidence on the points in question was sufficient to justify the verdict. Henningsen v. Bloomfield Motors, Inc., *supra*, at p. 409, 75 A. L. R. 2d 35; Elmore v. American Motors Corp., 70 Cal. 2d 578, 75 Cal. Rptr. 652, 451 P. 2d 84, 86, 33 A. L. R. 3d 406; Vandermark v. Ford Motor Co., 61 Cal. 2d 256, 37 Cal. Rptr. 896, 391 P. 2d 168.

In rebuttal the plaintiff called Dr. Bradley, a professor of metallurgical engineering at the Colorado School of Mines, and Dr. Copeland, an associate professor in the same department. Dr. Bradley, after appropriate foundation was laid, gave his opinion that the fracture in the gear tooth of the Falcon was not an impact fracture and that the gear tooth had broken some time prior to impact. Dr. Copeland, after appropriate foundation was laid, testified the defect in the sector gear was a machine gouge in the base of the gear tooth, which would occur during manufacturing. Later a motion to strike this testimony was made upon the basis that it was improper rebuttal. No such objection was made at the time the evidence was admitted.

Assuming but not holding that the timely objection of "improper rebuttal testimony" would have been proper, the refusal to sustain the motion to strike was not error. Entertainment of a belated motion to strike testimony, no objection having been previously made, is discretionary with the trial court. Western Plastics Corp. v. Westinghouse Electric Corp., 184 Neb. 498, 169 N. W. 2d 1.

AFFIRMED.

BOSLAUGH, J., dissenting.

I dissent from that part of the opinion which holds the evidence was sufficient to permit the jury to find that a defect in the steering apparatus of the Poppe automobile, if one existed, was the proximate cause of the accident and the plaintiff's injuries.

Much of the evidence in this case relates to the issue

of whether the steering apparatus of the automobile was defective. There is very little evidence as to what caused the accident in which the plaintiff was injured. There is no direct evidence as to what caused the accident. What evidence there is as to this issue is circumstantial in nature.

Circumstantial evidence is not sufficient to sustain a judgment unless the circumstances proved are of such a nature and so related to each other that the conclusion reached is the only one that fairly and reasonably can be drawn therefrom. Norcross v. Gingery, 181 Neb. 783, 150 N. W. 2d 919. Where several inferences may be drawn from the facts proved, which inferences are opposed to each other but equally consistent with the facts proved, the plaintiff may not sustain his position by a reliance alone on the inferences which would entitle him to recover.

The record shows that the plaintiff and Lois Poppe had worked as nurses' aides at Crawford, Nebraska, on the day that the accident happened. They drove to Crawford in the morning and at about 3 p.m., left Crawford to return to Chadron, Nebraska. They were about 8 miles west of Chadron on old U. S. Highway No. 20 when the accident happened. Lois, who was 17 years of age, was driving. The weather was clear and the road was dry. The highway was a 2-lane highway, 21 or 22 feet wide, with shoulders. There was a curve about 1¾ miles west of where the accident happened. Going from Crawford to Chadron the highway curved to the right and turned generally from north to east. From the curve the highway ran in a straight line to where the accident happened. The land was rolling and there were gradual changes in the elevation of the highway.

The trip was without incident until the accident happened. The plaintiff testified that the automobile "started to vibrate" and that it "swerved to the left-hand side of the road." The plaintiff looked at Lois and saw that she had both hands on the wheel, was looking

straight ahead, and had a shocked expression on her face. Neither Lois nor the plaintiff said anything to each other at the time of the accident.

The Poppe automobile had passed another automobile on the curve west of the scene of the accident. The other automobile was being operated by Geraldine K. Licht and was traveling about 45 miles per hour in an easterly direction. The Poppe automobile was going about 50 miles per hour as it passed the Licht automobile. There was no other traffic nearby.

As the Poppe automobile returned to its own lane, after passing the Licht automobile, Mrs. Licht noticed that "the rear end wobbled like an empty pickup." Mrs. Licht did not notice anything further of an unusual nature until her husband, Walter H. Licht who was sitting beside her, said: " 'Watch out for the car ahead!' " and " 'Slow down.' " Mrs. Licht testified that she noticed the Poppe automobile wobble toward the left of the highway, back to the right, and then into the left ditch. The speed of the Poppe automobile was then about 50 or 55 miles per hour.

Mr. Licht testified that after the Poppe automobile had passed them he noticed that "the back end had a tendency to ride a little to the left-hand side." Then, as they were proceeding down the highway, he noticed the Poppe automobile "wobbled slightly," "hit the side of the road a little bit," and then "veered across the road into the ditch on the other side." A large cloud of dust was thrown up and the Poppe automobile was out of their sight for a short time.

Ed Chamberlain, a deputy sheriff, was called to the scene of the accident. When he arrived the Poppe automobile was in the ditch north of the highway resting on its top and upper right side. He saw there were tracks showing that the right wheels of the automobile had traveled for approximately 225 feet on the right shoulder of the highway; that it then veered across the road to the left for a distance of 100 feet; that as it left the north edge of the pavement it veered a little bit more to

the east and traveled 65 feet until it hit a rut in the ditch; and that it then rolled end over end for a distance of 60 feet and came to rest. Chamberlain saw that one tire was down.

Everett C. Johnson brought the Poppe automobile into Chadron, Nebraska, after the accident. When he arrived at the scene of the accident the automobile was resting on its top and upper right side in the ditch north of the highway. The tire on the left rear wheel was flat, so he changed this wheel before tipping the automobile over onto its wheels. He then raised the front end of the automobile with the wrecker and towed it into Chadron.

After the accident the tire and the rim that had been removed from the left rear wheel of the Poppe automobile were examined. No puncture or other defect was found in the tire which was a tubeless tire. There was a large dent on the inner flange of the rim where the edge was bent inward.

There had been no mechanical difficulties of any kind with the Poppe automobile. It had never been repaired and had received only normal maintenance. On the day before the accident it had been driven approximately 250 miles on a trip to South Dakota over winding roads, S curves, and pigtail turns with no difficulty of any kind.

There is no direct evidence of any kind that the steering gear on the Poppe automobile "locked up" at the time of the accident or at any other time. The evidence is that the steering wheel turned freely after the accident.

Buddy Taylor and Bobby Unser, expert automobile mechanics with racing experience, were permitted to testify at length about experiments they conducted with a similar automobile. They were allowed to demonstrate before the jury that a tooth deliberately broken from a sector gear, which required a force of 20,000 pounds, and then broken into two pieces and replaced in the gear will, on occasion, cause the steering to lock up.

They testified that in driving a similar automobile, with the fragments of a broken tooth contained in the gear, the steering gear locked up 3 times in 50 miles, ultimately causing the automobile to leave the highway.

It is of some significance that in their demonstration it was necessary to turn the steering wheel to its limit and then reverse its rotation in order to produce a lock-up. It is also of significance that when the gear is locked so that it will not turn in one direction, the steering wheel may still be turned in the opposite direction.

At the time of the accident in this case, the automobile was traveling on a portion of the highway that was straight. There is no indication that the steering wheel was turned or being turned in the manner in which the fragments would cause the gear to lock up. The evidence is that the automobile first turned slightly to the right, then to the left, and then back to the right.

On the issue of proximate cause the testimony of Taylor and Unser as to their experiments with a similar automobile went no further than to show that it was possible for a fragment from a broken sector gear to cause the steering mechanism to "lock up" and prevent the steering wheel from being turned in one driection.

No one knows what caused the accident in this case. The burden of proof was on the plaintiff, and before she could recover she was required to prove that the accident was caused by a defect in the steering apparatus. It was not enough to show that it was possible for a defect to cause the accident.

There are several inferences as to causation that can be drawn from the evidence in this case which are opposed to the inference that the plaintiff relies on and which are at least as strong as the inference that the accident was caused by a defect in the steering gear. The "vibration" described by the plaintiff and the "wobbling" of the rear end described by the Lichts is consistent with the flat rear tire which was found after the accident. Lois Poppe was a relatively inexperienced

driver, and it is possible that overcorrection after driving onto the right shoulder of the highway in a moment of inattention resulted in loss of control.

If the proven facts go no further than to give equal support to two or more inconsistent inferences, the evidence is not sufficient to sustain a finding based upon one of the inferences. Sherman v. Lawless, 298 F. 2d 899 (8th Cir., 1962). See, also, Ford Motor Co. v. Mondragon, 271 F. 2d 342 (8th Cir., 1959), holding that the plaintiff cannot recover where the evidence fails to show that it is reasonably probable, not merely possible, that the accident was caused by the alleged defect, and more probable than any other hypothesis based on the evidence.

One other matter requires mention. Taylor was permitted to testify, over objection, that it was his opinion that a broken sector tooth locked up the steering gear and caused the accident. This was an ultimate fact to be decided by the jury upon the basis of the whole evidence and was not a proper subject for expert testimony in this case. Stillwell v. Schmoker, 175 Neb. 595, 122 N. W. 2d 538. Until this case, this court has consistently held such testimony is improper. See, Flory v. Holtz, 176 Neb. 531, 126 N. W. 2d 686; Danner v. Walters, 154 Neb. 506, 48 N. W. 2d 635; Caves v. Barnes, 178 Neb. 103, 132 N. W. 2d 310. I also agree with Judge Smith that the testimony was conjectural and superfluous.

SMITH, J., dissenting.

The circumstantial evidence rule stated in the second syllabus of Norcross v. Gingery, 181 Neb. 783, 150 N. W. 2d 919 (1967), is either misleading or incorrect. See Wolstenholm v. Kaliff, 176 Neb. 358, 366, 126 N. W. 2d 178, 183 (1964), (White, C. J., concurring).

Taylor's testimony to causation touched an ultimate fact, but there I see no reason for an exclusionary ruling. The testimony, however, was conjectural. Furthermore, assuming arguendo the existence of a factual issue of causation, I think the testimony was superflu-

ous. " '. . . whenever the point is reached at which the tribunal is being told that which it is itself entirely equipped to determine without the witness' aid . . ., his testimony is superfluous . . ..' " Sears v. Mid-City Motors, Inc., 179 Neb. 100, 136 N. W. 2d 428 (1965).

I otherwise concur with the dissenting opinion by Boslaugh, J.

NEWTON, J., dissenting.

The evidence shows that the automobile in which plaintiff was a passenger was being operated at a speed of 50 to 55 miles per hour. It is not contended that the brakes were defective, yet the vehicle traveled over 385 feet from the time it first left the paved portion of the highway until it upset. It could readily have been stopped within that distance. Even if we accept *all* of plaintiff's contentions, it is apparent that the sole *proximate* cause of the accident was the failure of the driver to apply the brakes and stop.