**NORFOLK DEVELOPMENT CORPORA-TION, Inc., Plaintiff,**

v.

**ST. REGIS PULP AND PAPER CORPO-RATION and St. Regis Paper Company, Defendants.**

**GILLETTE DAIRY, INC., Plaintiff,**

v.

**ST. REGIS PULP AND PAPER CORPO-RATION and St. Regis Paper Company, Defendants.**

Civ. Nos. 03190, 03191.

United States District Court, D. Nebraska.

March 9, 1972.

Robert W. Haney, Sr., and Jon J. Gergen, Omaha, Neb., for plaintiffs.

L. J. Tierney, Omaha, Neb., for defendants.

## MEMORANDUM DECISION

DENNEY, District Judge.

This matter came before the Court for trial without jury commencing the 23rd day of August, 1971. Evidence was received and all post-trial briefs have been submitted. The Court will now render its decision. Jurisdiction is found pursuant to 28 U.S.C. § 1332.

## PARTIES

Plaintiff Gillette Dairy, Inc., (Gillette hereafter) is engaged in the manufacture, processing and sale of dairy products in and around the Norfolk, Nebraska, area. Plaintiff Norfolk Development Company (Norfolk hereafter) is the lessor of the real estate and plant facilities upon which Gillette conducts its business activities. The manufacturer of the compressor involved in this lawsuit was merged into St. Regis Pulp and Paper Corporation (St. Regis hereaf-

ter), which is a wholly-owned subsidiary of defendant, St. Regis Paper Company, and its affiliate, St. Regis Paper Company, Ltd. of Canada. Hereafter, the designation St. Regis will also be used to designate Creamery Package Corporation, the manufacturer of the compressor, since, after the merger noted above, St. Regis was the sole surviving corporation and is liable upon these claims as would have been Creamery Package.

For reason apparent hereafter, the parent St. Regis Paper Company has no liability in this action. No showing has been made of any relation to the occurrences in this action and the parent corporation will, therefore, be dismissed with prejudice.

## FINDINGS OF FACT

In the late 1950's, Gillette moved into new plant premises leased from Norfolk Development in the city of Norfolk, Nebraska. St. Regis designed and installed the refrigeration system in the plant. Plaintiff Gillette was assured of the explosion-free nature of the St. Regis machines. In 1961, at the suggestion of agents of St. Regis, Gillette replaced a 4-cylinder compressor in its refrigeration system with a 6-cylinder compressor manufactured by St. Regis. The assembly and installation of this compressor were performed by St. Regis.

On January 18, 1965, the 6-cylinder compressor exploded and caused a fire which resulted in extensive damage to the Norfolk premises and Gillette property therein.

In general detail and operation, a compressor such as here involved can be loosely analogized to an automobile engine. The significant difference is that compression is a means to an end in the automobile engine, while it is an end in itself in the compressor. The compressor consists of a cylinder block, in which the drive shaft, connecting rods and pistons operate; three cylinder blocks, containing circular ring intake and exhaust valves and their related equipment; three valve blocks; and three heads which channel the compressed gas to a point where it can be circulated through the system.

The pistons in this compressor were designed to be "mill-ended." The upper surface of the piston is three and one-half inches in diameter. The piston is cylindrical, resembling a soup can with one end removed. Upon the inside face of the upper surface, a mill tool $\frac{7}{8}''$ in diameter was to remove material in the center of the surface until the remaining thickness of the upper surface was .047" to .052". As can be seen from the number of heads, the pistons sit in three groups of two with one intermediate head and one head serving each group. One group is verticle with a group to either side at approximately a 60° angle to the verticle. It was the head serving the verticle or center group of pistons which fractured, resulting in the fire.

The 6-cylinder compressor in the Gillette plant compressed ammonia gas, taking the gas from 15–30 p. s. i. on the intake side of the machine to 185 p. s. i. on the exhaust in normal operating conditions. The compressor heads were designed to withstand 1000 p. s. i. The pistons were designed to withstand 500 p. s. i. "differential pressure"—the difference between the crank case pressure and that above the top of the piston.

The collapsible piston with its "thin spot" was designed to prevent a dangerous build-up of pressure in the compressor and to eliminate the danger of damage due to liquid "slug backs" or "flood backs." A liquid slug back results when a liquid comes through the system into the compressor. This can be liquid ammonia, oil, water, etc. The problem arises when sufficient liquid enters the cylinder to take up the clearance space above the cylinder when it is at the top of its stroke. For example, a cylinder half full of a liquid progresses upward smoothly until all of the gas above the liquid is out of the cylinder and the surface of the liquid strikes the top of the cylinder. Since liquids are only slightly compressible, the impact of the surface of the liquid is not cushioned and the "impact pressures" can be substantial.

The purpose of the collapsible piston is thus apparent. It prevents pressures building up to above the pressure tolerance of the cast iron compressor heads and prevents repeated impact pressures from liquid slug backs. A piston which is not collapsible presents a danger to the machine and anything in its immediate vicinity.

On January 18, 1965, at approximately 8:10 A.M., the 6-cylinder compressor manufactured and installed by St. Regis started to make a knocking sound and exploded. The resulting fire caused extensive damage and the refrigerant permeated and spoiled the dairy products in the plant.

After the fire was extinguished and workmen were able to enter the premises to disassemble the compressor, it was discovered that one cylinder in each of the two side groupings had collapsed, but that neither cylinder in the center group had done so. Further, the compressor head for the center group was the only one which broke. Apparently, no other portion of the machine fractured to permit transmission of the refrigerant into the surrounding atmosphere. There was testimony that a substantial amount of oil was in the cylinders. The Court finds from the photographs, plaintiff's Exhibits 4 and 5, and observing the demeanor of the witnesses that, although some oil was present in the cylinders, it was by no means as extensive as was indicated in the testimony. The photographic exhibits reveal a great deal of roofing tar and other burnt materials coated nearly everything in the plant.

The Court finds that the proximate cause of the explosion of the compressor was the failure of either or both pistons in the center group to collapse as they were designed to do. The Court further finds that this failure was caused by the defective manufacture of the pistons.

St. Regis was notified of the malfunction of its product as early as the day subsequent to the explosion.

The damages to Gillette, consisting of the contents of the building, ruined product, materials and supplies, and the cost of purchase and transportation of products to cover customers' orders, over and above the cost of production of those products to Gillette, amount to $82,141.78.

Gillette has failed to show a loss of profits resulting from the fire. After reviewing plaintiff's Exhibit 60, the Court is convinced that the loss incurred during fiscal 1965 was the result of increased costs unrelated to the fire. It should be noted that Gillette's net sales were substantially increased in 1965 over the previous year. The major increases in expenses came in the areas of milk purchases and selling expenses while manufacturing and general expenses decreased.

Plaintiff Norfolk has shown damage to the building and fixtures in the sum of $108,850.77.

## LAW

Plaintiff Gillette seeks recovery under the theories of negligence, express warranty, implied warranty and strict liability in tort. Plaintiff Norfolk seeks recovery under the theories of negligence, implied warranty and strict liability in tort. Defendant St. Regis asserted the defense of contributory negligence, but the burden of proof resting upon St. Regis upon that issue was not satisfied.

Another defense, asserted in oral arguments at the trial and not supported by the pleadings, is a waiver of warranties provision contained in the boilerplate of the compressor sales contract. St. Regis has not sought to amend its pleadings, nor did it give notice of this defense until trial had commenced. If this provision was to be a determinative factor in this case, the Court would be inclined to deny it any application, due to the failure of St. Regis to disclose the defense prior to trial and the failure of St. Regis to amend its pleadings to support the defense.

However, the Nebraska Supreme Court has recently adopted the theory of strict liability in tort. Kohler v. Ford Motor Co., 187 Neb. 428, 191 N.W.2d 601 [1971]. Since this decision will rest upon the basis of that doctrine, no further discussion of the waiver of warranty provision need take place.

 The *Kohler* decision concerned personal injury but, noting the Nebraska Court's reliance upon the California Supreme Court decision of Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 647, 337 P.2d 897 [1963], it is certain that Nebraska will also apply the doctrine to instances where property damage, as opposed to personal injury, is the basis asserted for recovery. *E. g.*, Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 [1965]. *See* Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 [1965]; and Dealers Transport Co. v. Battery Distributing Co., 402 S.W.2d 441 [Ky.1965].

The Court notes that as to Gillette, the recovery of lost profits under the doctrine of strict liability has not generally been favored, *e. g.*, Seely v. White Motor Co., *supra*, but that Gillette has failed to prove such damages resulted, with reasonable certainty, from the explosion.

The doctrine of strict liability has also been extended to protect third-party nonpurchasers, Kohler v. Ford Motor Co., *supra*. See, e. g., Greenman v. Yuba Power Products, Inc., *supra*; Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 [1964]; and Mitchell v. Miller, 26 Conn.Sup. 142, 214 A.2d 694 [1965].

## CONCLUSION

 St. Regis placed an article in the market, knowing it was to be used without inspection for defects; the machine was assembled and installed by St. Regis employees. The defect caused injury to Gillette and Norfolk. Gillette was damaged and will recover $82,141.78. Norfolk was damaged and will recover $108,850.77. This latter sum includes amounts expended in the clean-up and painting of boiler room walls. The judgment will be against St. Regis Pulp and Paper Corporation. The complaint is dismissed as against St. Regis Paper Company, with prejudice. Costs will be taxed against defendant St. Regis Pulp and Paper Corporation.

An order of judgment will be entered contemporaneously with this Memorandum.